HODGES *v.* DETROIT ELECTRIC LIGHT & POWER CO.

1. PRINCIPAL AND AGENT—AUTHORITY—QUESTION FOR JURY.
    Whether one who for five years has had charge of the affairs of a corporation as superintendent and general manager, and who is also a member of its board of directors, has authority to bind the corporation by a promise to pay for the attendance of a nurse upon an injured employé, is a question for the jury.[1]

2. SAME—EVIDENCE.
    In a suit by a nurse to recover for services rendered to an injured employé of a defendant corporation, the testimony of the attending physican that he had charged his own services to defendant on his books was incompetent, although it was claimed that the defendant had authorized the physician to employ the plaintiff.

Error to Wayne; Hosmer, J. Submitted April 22, 1896. Decided June 2, 1896.

---

[1] The decisions as to the duty of a master to furnish medical aid to a servant are compiled in a note to *Ohio & M. R. Co.* v. *Early*, (Ind.) 28 L. R. A. 546.

*Assumpsit* by Harry Hodges against the Detroit Electric Light & Power Company for services rendered as nurse to an employé of defendant. From a judgment for plaintiff, defendant brings error. Reversed.

*Keena & Lightner*, for appellant.

*Edward S. Grece* and *Howard J. Hall*, for appellee.

LONG, C. J. This cause was commenced in justice's court, and appealed to the circuit, where, on a trial before a jury, verdict and judgment were rendered in favor of the plaintiff for $100. The action was brought for services rendered by the plaintiff as nurse to one Hardenburg, who, while in the employ of the defendant, was severely burned on his face and neck, causing injuries requiring medical attendance and the attention of a nurse. The injury was caused by the explosion of a steam valve, and, after the injury, Hardenburg was at once removed to Emergency Hospital, where his injuries were dressed. It appears that the defendant, at the time of the accident to Hardenburg, held a policy, made by the Standard Life & Accident Insurance Company to the defendant, wherein the insurance company agreed to pay to the defendant all sums it (the defendant) might become liable for on account of bodily injuries sustained by its employés on or about its premises, which policy contained the following stipulation:

"It is hereby agreed, in the event of injury of any employé of the assured, resulting from accident occurring during the hours of labor, and while actively employed in the service of the assured, that the company's surgeon shall attend such employé until he shall have fully recovered from the effects thereof; that said employé can be sent to any public hospital in the city, and the charges for services rendered injured employés shall be paid by said company."

Dr. Hitchcock, the regular physician of the insurance company, being advised of the accident, made inquiry at

the hospital, and on the next morning called and examined Hardenburg, and advised his removal to Harper Hospital, where he would give him personal attention and care; such change being necessary because he was not a member of the medical staff of Emergency Hospital. Hardenburg did not wish to go to the hospital, and at his own request was removed to his own home. Dr. Hitchcock offered to attend him there, but at Hardenburg's request one Dr. Judson was sent for, who attended him until his recovery. The plaintiff, in nursing Hardenburg, claims that he was employed by the defendant through Dr. Judson, and that Dr. Judson was instructed to make such employment by Mr. Fitzgerald, the manager of the defendant company. Dr. Judson testified that he employed the plaintiff, and was authorized to do so by Mr. Fitzgerald; that he called at the office of defendant a day or two after the accident, saw Mr. Fitzgerald, told him it was a very severe case, needing care night and day, and he would have to have a nurse; and that Fitzgerald told him to employ a nurse, and thereupon he employed the plaintiff. The witness was then asked:

"What did he say about paying for it?
"*A.* He said that my bill and the nurse's bill they would see to. He would see to that."

This conversation took place, as claimed by Dr. Judson, at the office of the company, and following said instructions he told the plaintiff what Fitzgerald said. This conversation is denied by Mr. Fitzgerald. The court submitted the question of authority of Mr. Fitzgerald to make this contract for and in behalf of the company to the jury, saying:

"So far as the question of authority is concerned, I cannot say to you that there is no evidence in this case from which you may infer that the superintendent or manager of the institution, as Mr. Fitzgerald testified he was, was authorized to make a contract. I think, from the evidence of what he did, and the evidence that he was the manager, you may draw the inference that he

was authorized to make such a contract as the plaintiff contends in this case was made. I do not say it is a necessary inference, but from the testimony in this case it is for you to say whether Mr. Fitzgerald did or did not have power to make a contract for the nursing of the injured man, as is claimed by the plaintiff in this case."

. Further on in the charge the court said, upon the same question:

"To restate, perhaps, what I said at first, the plaintiff is not entitled to a verdict unless you find—*First*, that the manager, Mr. Fitzgerald, was authorized to employ him; *second*, that he did employ him."

Certain requests were presented by counsel for defendant which the court refused to give to the jury, and certain assignments of error refer to such refusal. These requests, taken together, substantially are: That there was no evidence in the case that Mr. Fitzgerald ever authorized the employment of the plaintiff for or on behalf of the defendant; that there was no evidence that Mr. Fitzgerald had power and authority to employ the plaintiff for and on behalf of the defendant; that the evidence showed that the defendant had made provision for the medical attendance and care of its employés injured by accident; that, under such circumstances, the burden of proof rests upon the plaintiff to show that Mr. Fitzgerald had authority from the company to make the contract claimed by the plaintiff; and that, under the pleadings and proof, the plaintiff was not entitled to recover. The evidence showed that Mr. Fitzgerald was the superintendent of the company, its manager, a stockholder, and one of the board of directors. The company is a domestic corporation, organized under an act to authorize the formation of electric light companies within this State.

We think the court was not in error in refusing these requests to charge, and that the charge as given substantially sets out the law in reference to the power of Mr. Fitzgerald. Under the testimony, it was a question of

fact, for the jury to determine, whether the power existed in Mr. Fitzgerald to bind the company in the manner claimed by the plaintiff. The public cannot deal with a corporation except through its agents. Mr. Fitzgerald's position in the company, as superintendent and general manager of its affairs, was recognized; and he was the only person known to Dr. Judson or the plaintiff of whom inquiry could be made as to what the company was willing to do for the relief of Hardenburg. It is apparent that Hardenburg understood that the company would furnish medical care and attendance, and Mr. Fitzgerald, as superintendent and manager, acquiesced in the arrangement by which Hardenburg was taken to his own home, instead of being treated at the hospital, and also acquiesced in the arrangement to have Hardenburg treated by Dr. Judson instead of by Dr. Hitchcock, the physician of the insurance company. He was aware, before the services were rendered, if the testimony of Dr. Judson be true, that the plaintiff was to be employed, and authorized such employment, and agreed that "they" (meaning the company) would see to the payment of the bills. A somewhat similar question was presented in *Marquette, etc., R. Co.* v. *Taft,* 28 Mich. 289. While the court was equally divided upon the question of the authority of the superintendent of the railway company to bind the company for the services of a physician rendered to an injured employé, we are disposed to follow the reasoning of Mr. Justice COOLEY, concurred in by Mr. Justice CHRISTIANCY, in the case. There it was said by Mr. Justice COOLEY:

"We think it is within the general scope of the employment of a railway superintendent to make such a contract as the jury have found was made in this case, and that no evidence to prove a special authorization is requisite."

In the present case, the management of the affairs of the corporation had, for upwards of five years, been left in the hands of Mr. Fitzgerald. An effort had been made,

through the insurance company, by the defendant, to provide and care for the employés of the company injured while in discharge of their duties; and the mere fact that Hardenburg was provided and cared for at his own home cannot affect the question of the power vested in Fitzgerald to make the arrangement which is claimed by the plaintiff. We think the case was properly submitted, upon that question, for the determination of the jury.

Error is also assigned upon the ruling of the court in permitting Dr. Judson to testify that he charged upon his own books of account for his services rendered to the company. The question arose as follows: He was being examined by counsel for the plaintiff, and was asked:

"Did you ever make any demand upon Mr. Hardenburg for your pay?

"*A.* I had some conversation with him about it, and I did not make any demand on him. I charged my bill up, and it is on my books, to the Detroit Electric Light & Power Company; and it is on my books."

Counsel for defendant asked the court to strike out the testimony as to the account being charged to the company. This was refused. It is apparent that this was not responsive to the question, and could but have been prejudicial to the defendant. The whole case hinged upon whether the jury took Dr. Judson's statement, or that of Mr. Fitzgerald, as true; and the fact that Dr. Judson charged his services to the defendant might have been regarded by the jury as evidence that the contract was made as claimed by the plaintiff. The testimony was incompetent for any such purpose, and we think the court should have stricken it out when the request was made.

For this reason the judgment must be reversed, and a new trial ordered.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred with LONG, C. J. GRANT, J., concurred in the result.