SCHAUB *v*. ARC WELDING CO.

|     |     |
| --- | --- |
| 123 | 487 |
| s125 | 592. |
| 125 | 595 |
| 125 | 597. |
| 125 | 603. |
| 123 | 487 |
| s82ɴW | 235 |
| 123 | 487 |
| e135 | 437 |

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT.

The use of the term "general superintendent" in a written contract of employment does not render it so ambiguous as to make the contract void, since the parties must be deemed to have used the term in the sense in which it would be understood by those engaged in the same kind of business.

2. APPEAL—CONDITION OF RECORD—EXCEPTIONS.

Defendant cannot complain because, after the exclusion of the testimony of one of his witnesses, testimony of a like character was admitted on behalf of the plaintiff, where it does not appear from the record that he took an exception to the ruling excluding the testimony, or offered afterwards to recall his witness.

3. MASTER AND SERVANT—WRONGFUL DISCHARGE—DEFENSES—RES GESTÆ.

In an action for the wrongful discharge of an employé, where it was claimed in defense that plaintiff was guilty of insubordination in refusing to execute a sketch when directed to do so, a letter written by plaintiff on the day the order was given, advising defendant of the inclosure of the sketch, was admissible as part of the *res gestæ*.

4. SAME—INSUBORDINATION—PROVOCATION—EVIDENCE—QUESTION FOR JURY.

Where in an action for the wrongful discharge of an employé, the evidence showed that plaintiff, the general superintendent of a manufacturing concern, while laboring under considerable provocation because of the manner in which an order had been given him by the president of the concern to prepare a certain sketch, told the latter that he wanted no more talk with him, and would "see about" making the sketch, but that he immediately afterwards complied with the order, and advised the president of the fact, defendant could not complain because it was submitted as a question for the jury whether, under the circumstances, plaintiff was guilty of insubordination which warranted the president in discharging him.

Error to Wayne; Lillibridge, J.    Submitted February 2, 1900.    Decided March 27, 1900.

*Assumpsit* by Julius W. Schaub against the Arc Welding Company for the breach of a contract of employment.    From a judgment for plaintiff, defendant brings error.    Affirmed.

*Alfred J. Ducharme (Cyrus E. Lothrop,* of counsel), for appellant.

*Wells, Angell, Boynton & McMillan,* for appellee.

MONTGOMERY, C. J.    This is an action of *assumpsit,* brought to recover damages for an alleged breach of a written contract of employment, which is set forth in full in the declaration.    The contract of employment, which is dated September 7, 1897, was entered into between the defendant, a Michigan corporation, and another corporation, as employers, and plaintiff as employé, and was for the employment of the plaintiff for a period of three years from September 1, 1897, as the "general superintendent" of the employing companies, at a compensation of $2,500 for the first year, $3,750 for the second, and $5,000 for the third year, together with a percentage of the annual net profits and income of the companies of 2 per cent. for the first year and 3 per cent. during the remainder of the term, it being guaranteed that such percentage should amount to not less than $1,000 for the first year and $1,500 per year for the second and third years.    By the terms of the contract, each of the employing companies was to pay and be responsible for one-half of plaintiff's salary and percentages, the contract being several, and not joint, in that respect.    Plaintiff began work on September 12, 1897, and continued in the employ of the defendant until January 17th following, when he was discharged from the defendant's service by Mr. C. L. Coffin, the president of the corporation.    There is no contention but that plaintiff was paid in full up to the

time of his discharge, so far, at least, as the question of his fixed annual salary for that period is concerned. The suit was brought to recover his salary and percentages, or that portion thereof claimed to be due from defendant, for the balance of the term of three years. The defendant's plea was the general issue, coupled with a notice that defendant would claim plaintiff's discharge to have been justified on two grounds, viz., incompetency to perform the duties for which he was employed and willful insubordination.

In the course of plaintiff's employment, he had made a sketch or drawing of a proposed machine for welding shells, which had been on the drawing-board of the company's factory, but which had disappeared. On the morning of the 17th of January, Mr. Coffin, acting for the company, asked the plaintiff if he had the sketch or drawing. He replied that he had not. According to the defendant's version, the following conversation then took place:

"*Mr. Coffin:* Mr. Schaub, I want a sketch now, at once, before anything else is done, of the drawing which was on the drawing-board at the factory, as near as you can reproduce it.

"*Mr. Schaub:* I'll let you know.

"*Mr. Coffin:* Is there anything to prevent your doing it now?

"*Mr. Schaub:* No.

"*Mr. Coffin:* Then, at once, before anything else is done, I want one.

"*Mr. Schaub:* I will let you know.

"*Mr. Coffin:* That is not what I want; I want the sketch, as near as you can reproduce it.

"*Mr. Schaub:* Mr. Coffin, you are the queerest man I ever saw. I have had trouble enough with you. I do not want anything more to say to you or do with you.

"*Mr. Coffin:* Mr. Schaub, do you understand my request? I want a sketch at once, before anything else, as near as you can produce it, of the sketch you referred me to; which was on the board at the factory, and which has disappeared. Will you make that sketch at once?

"*Mr. Schaub:* Mr. Coffin, you cannot talk that way to me. I will let you know whether I will make it. I want no more talk with you.

"*Mr. Coffin :* Mr. Schaub, have you that sketch, or do you know anything about its disappearance ?

"*Mr. Schaub :* No.

"*Mr. Coffin :* You made the sketch, and know its details; therefore you can reproduce, as near as possible, the sketch, can you not?

"*Mr. Schaub :* I will see about that."

The plaintiff states that his version differs slightly from the version given by the defendant; that he did not say, "I don't want anything more to do with you," but stated, "I don't want to be bothered with you."

Within a very short time after the conversation, plaintiff did prepare the sketch asked for, and handed it to Mr. Coffin, with the following letter:

"DETROIT, MICH., January 17th, 1898.
"C. L. COFFIN, Esq.,
                    "President.

"*Dear Sir :* I beg to inclose you herewith a copy, made from memory, of a sketch made some time ago, previous to January 7th, 1898. This is, I believe, what you requested me to make this morning. Hoping this is entirely satisfactory, I beg to remain,

"Yours truly,
"J. W. SCHAUB."

The question of plaintiff's competency turns somewhat upon the question of what his duties were intended to be. The defendant's claim was that it was understood that he was to supervise the mechanical part of defendant's business, and plaintiff's claim was that he was to act as a business manager.

One of the errors assigned is that the court refused defendant's sixth request, which reads as follows:

"If the jury find that it was understood on the part of defendant, at the time of signing the contract, that Mr. Schaub was employed for certain specific purposes, and on the part of Mr. Schaub that he was not employed for those purposes, but was employed for other and different purposes, there would have been no proper mutual understanding or agreement between the parties at the time of signing the contract, and consequently the contract of employment would be void."

We think this request was properly refused. There was nothing so ambiguous about the written contract of employment as to render it void. If the term "general superintendent" is to be deemed at all ambiguous when used in connection with the kind of business defendant was engaged in, it may be subject to explanation, but the parties must be deemed to have used it in the sense in which it would be understood by those engaged in that business.

Two errors are assigned on the admission of testimony as bearing upon the claim of defendant that plaintiff was incompetent for the work for which he was engaged. It was deemed of importance to show the properties of steel which had been subjected to high heat by defendant's arc process. Plaintiff, on rebuttal, produced a witness, and asked whether he was familiar with the properties of steel which had been subjected to a high heat. This was objected to unless the inquiry was confined to metal heated by the voltaic arc, counsel saying at the same time that the court had excluded testimony of Prof. Cooley, offered by the defendant, as to the effect of welding by ordinary forge heat, and, accompanying the statement, "If you will allow me to bring back Prof. Cooley, I will not object." The court admitted the testimony. We think the testimony was in itself admissible. No exception appears to the exclusion of the testimony of Prof. Cooley, nor does it appear that there was any offer to recall Prof. Cooley. The record is not in condition to call for a ruling on the exclusion of Prof. Cooley's testimony.

Another assignment of error on the admission of testimony is based on the receipt of the letter to Mr. Coffin, written by the plaintiff on the 17th of January, accompanying the sketch. We think this was clearly admissible as part of the *res gestæ*.

The defendant further contends that, upon the undisputed testimony in the case, the insubordination of plaintiff was such as to justify plaintiff's discharge, and cites *Degen* v. *Railway Co.*, 113 Mich. 66 (71 N. W. 459). That case differs from this in that it appeared in that case that the

employé absolutely refused to obey the instructions of the superior officer. In the present case there was no distinct refusal to comply with Mr. Coffin's order; on the contrary, the order was complied with very shortly after it was given. It is true the language of plaintiff might be deemed disrespectful, but we are not prepared to say that the language of Mr. Coffin was altogether respectful when it is considered that the plaintiff occupied a position of great responsibility. See *Park Bros. & Co.* v. *Bushnell*, 9 C. C. A. 138, 60 Fed. 583; *Edwards* v. *Levy*, 2 Fost. & F. 94; *Shaver* v. *Ingham*, 58 Mich. 649 (26 N. W. 162, 55 Am. Rep. 712). The charge of the learned judge upon this branch of the case was as follows:

"Now, the question for you in this case is whether, under the testimony, you believe that the plaintiff was guilty of willful insubordination, or a direct refusal to obey the president, and whether his language was insulting or improper to the extent that it would interfere with the intimate relations between himself and the president which were necessary to successfully carry out the business. It is claimed on one side that there was no refusal to carry out the order; there was an evasive answer, but immediately afterwards the sketch was prepared and delivered. On the other hand, it is claimed that there was a direct refusal to obey the orders of the superior officer, and the language of Schaub was insulting, and that justified the discharge. All I can say upon this point or branch of the case is, if you believe from the testimony that the plaintiff was guilty of insubordination, and directly refused to obey the orders of a superior officer within a reasonable time, or if his language was so insolent that it interfered with the intimate relations between himself and the president of the company which were necessary to the carrying on of the business, then the discharge was justified; if it did not, then it was not justified."

We think this instruction sufficiently favorable to the defendant.

Error is assigned upon the refusal of certain other requests, but we are satisfied that the judge properly put the case to the jury.

Judgment affirmed.

The other Justices concurred.

GRANT, J. (*concurring*).   This case is on the border line.   The language of the plaintiff was a practical refusal to obey the order.   Had there been no provocation in the language or manner of the president of the defendant, and no prompt obedience of the order before he was discharged, the dismissal would have been justifiable.   But there is evidence of provocation in the language and manner of the president which may serve as some excuse for the hot words of plaintiff.   The case comes fairly within some of the authorities cited.   Both were employés of the defendant, and each was in duty bound to treat the other with becoming respect.   Plaintiff promptly complied with the order, and the defendant suffered no injury.   I do not think there was such a perverse and unreasonable disobedience of orders as to justify the court in taking the case from the jury.   I therefore concur.