125    591
s84NW1095
e130    607

125    591
e135    437

## SCHAUB *v.* WELDED-BARREL CO.

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—EVIDENCE—RES GESTÆ.

In an action for the wrongful discharge of an employé, plaintiff's letter written in answer to the letter of discharge, explaining and contradicting charges of misconduct contained therein, and inquiring as to the scope of the discharge, is admissible as part of the *res gestæ.*

2. SAME—CONTRACT OF HIRING—CONSTRUCTION.

Where, in an action for the wrongful discharge of an employé, it appeared that two corporations, which were officered by the same persons and were under the same management, had made a contract of hiring whereby plaintiff was to act for three years as their general superintendent, giving one-half of his time to each, at a fixed salary, payable one-half by each, and neither to be bound by the covenants of the other, and that plaintiff subsequently, after having some difficulty with the president, wrote to the companies demanding payment of back salary, and in reply received a letter, written by the president on the letter-head of the company for which the president was acting when the difficulty arose, informing him that he had been discharged for incompetence and insubordination, and stating that the treasurer had been directed to pay him a certain sum, which represented past-due salary from both companies to date of discharge,—the court would,

*it seems*, have been warranted in holding, as matter of law, (1) that the contract of hiring was joint, and not several, and (2) that the discharge was effective as to both companies.

3. Same—Submission of Question to Jury.

In any event, the company defendant in such suit could not complain because the question of its liability was submitted to the jury under evidence introduced by it to show that a discharge from the service of the other company alone was intended.

4. Principal and Agent—Agent's Authority—How Shown.

The secretary and treasurer of two companies was told by the president of both to discharge the plaintiff, then in their employ, on account of insubordinate conduct towards the president while acting for one of the companies, and for neglect and incompetence generally. With the assistance of the president, the secretary prepared one letter discharging plaintiff, and another announcing his discharge. *Held*, that the question whether he was authorized to bind the companies by a statement that the letter above was intended as a discharge from both companies was one of fact for the jury, since it did not turn on the acts or statements of the agent alone, but on all the circumstances of the transaction as disclosed by the evidence.

Error to Wayne; Frazer, J. Submitted December 5, 1900. Decided January 29, 1901.

*Assumpsit* by Julius W. Schaub against the Welded-Barrel Company for the breach of a contract of employment. From a judgment for plaintiff, defendant brings error. Affirmed.

*Cyrus E. Lothrop* and *Alfred J. Ducharme*, for appellant.

*Wells, Angell, Boynton & McMillan*, for appellee.

Moore, J. The plaintiff recovered a judgment against defendant for the breach of a contract which he entered into with the defendant and with the Arc Welding Company. He also sued the last-named company for a breach of the same contract, and obtained a judgment, which judgment was affirmed in *Schaub* v. *Arc Welding Co.*, 123

Mich. 487 (82 N. W. 235). A reference to that case will aid in arriving at an understanding of this case. Mr. Coffin was a stockholder, director, and president of the defendant company, as well as of the Arc Welding Company. Mr. Lothrop was also a stockholder, director, and secretary of both companies. He also acted as the legal adviser of both companies. Mr. Coffin had invented and patented processes for welding by the use of electricity. The companies were organized to operate under the same patents, although along different lines of business. The business office of the two companies was in the same rooms. The plaintiff was a civil engineer, and was manager of the Hamilton Bridge Works. In September, 1897, he entered into a contract, the essential portions of which read as follows:

"Memorandum of agreement made and entered into this seventh day of September, in the year of our Lord one thousand eight hundred and ninety-seven, by and between the Arc Welding Company, a corporation organized under and by virtue of the laws of the State of Michigan, and having its principal office and place of business at the city of Detroit, in the county of Wayne, in said State, of the first part, the Welded-Barrel Company, a corporation also organized under and by virtue of the laws of said State, and having its principal office and place of business at said city of Detroit, of the second part, and Julius W. Schaub, of said Detroit, of the third part, *Witnesseth:* * * *

"Said parties of the first and second parts do hereby hire and employ the said party of the third part for the period of three (3) years from and after September 1, 1897, as general superintendent, upon the terms and conditions hereinafter mentioned, and do hereby agree to pay to said Schaub the following salaries and compensation for his services, viz.: For the first year of said term, an annual salary of two thousand five hundred dollars ($2,500); for the second year, an annual salary of three thousand seven hundred and fifty ($3,750) dollars; and, for the third year, an annual salary of five thousand dollars ($5,000),—all payable monthly. * * *

"Said party of the first part and said party of the second part shall pay and be responsible for one-half of the annual salaries and compensation agreed upon to be paid to said party of the third part by the first paragraph hereof. * * * It is understood and agreed that each of said first and second parties shall be answerable and responsible to said party of the third part for the observance and performance by it of the covenants, conditions, and agreements by it hereby entered into on its part to be kept, observed, and performed, only, and not for the observance and performance by the other party of the covenants, conditions, and agreements hereby entered into on its part to be kept, observed, and performed.

"Said party of the third part hereby agrees to and with said parties of the first and second parts that, during said period, he will faithfully serve them in the capacity aforesaid to the best of his ability; that he will not engage in any other business or occupation whatsoever during the continuance of said term, without the written consent of said first and second parties; and that he will do all in his power during the continuance of this agreement to further and promote the interests of said parties of the first and second parts.

"It is agreed that the time of said party of the third part shall be equally divided between the business of said parties of the first and second parts, in case each of said parties shall require the full half of his time. * * *

"In witness whereof, said parties of the first and second parts have caused their corporate seals to be hereunto affixed and these presents to be subscribed by the hands of their respective presidents and secretaries, thereunto duly and lawfully authorized and empowered, and said party of the third part hath hereunto set his hand, the day and year first above written.

"Arc Welding Company.
"Welded-Barrel Company.
"Julius W. Schaub."

This contract was prepared by Mr. Lothrop under the advice and direction of Mr. Coffin and Mr. Schaub, and was signed on the part of the companies by him.

Mr. Schaub entered into the employ of these companies. He did not receive his pay for the month of December,

and consulted attorneys in relation thereto. Acting for him, the following letter was sent:

"DETROIT, MICH., Jan. 15th, '98.
"ARC WELDING COMPANY and WELDED-BARREL COM-
PANY,
"24 & 26 Newberry Building, City.
"*Gentlemen:* We inclose you herewith a bill of Julius W. Schaub against you for services for the month of December under a contract made between him and you dated September 7, 1897. Mr. Schaub has instructed us to collect this amount. Will you be good enough to see that a check is sent us at once?
"Yours truly,
"WELLS, ANGELL, BOYNTON & McMILLAN."

Mr. Angell testified this was the only letter sent upon this subject, and that the letter from Mr. Lothrop of January 17th was a reply to this letter.

The record discloses there was some friction between Mr. Schaub and Mr. Coffin, which resulted in words passing between them, which are referred to in the opinion in *Schaub* v. *Arc Welding Co.*, *supra*. Mr. Schaub testified that soon thereafter, and on the same day, he prepared the sketch, and sent it, two hours before he received a letter of the same date from Mr. Coffin, to Mr. Coffin, with the following letter:

"DETROIT, MICH., January 17th, 1898.
"C. L. COFFIN, Esq.,
"President.
"*Dear Sir:* I beg to inclose herewith a copy, made from memory, of a sketch made some time ago, previous to January 7th, 1898. This is, I believe, what you requested me to make this morning. Hoping this is entirely satisfactory, I beg to remain,
"Yours truly,
"(Inclosure.)                    J. W. SCHAUB."

Soon after the occurrence between Mr. Schaub and Mr. Coffin, the latter went to the office of Mr. Lothrop and told him what had occurred, and informed him he should "fire" (to express it in Mr. Lothrop's language) Mr.

Schaub. The two following letters were then prepared by Mr. Lothrop; he obtaining his information from Mr. Coffin, and Mr. Coffin being present during their preparation:

"ARC WELDING COMPANY.

"Coffin System.

"MACHINES FOR WELDING METALS.

"DETROIT, 17th January, 1898.

"Messrs. WELLS, ANGELL, BOYNTON & McMILLAN,
        "Union Trust Building, City.

"*Gentlemen :* I beg to acknowledge the receipt of your favor of this date, addressed to this company and the Welded-Barrel Company, inclosing bill of Julius W. Schaub for services alleged to have been rendered by him during the month of December, 1897, and requesting that a check for the amount claimed ($200.61) be sent to you at once. In reply I would state that, while it is not conceded by this company that Mr. Schaub is entitled to receive the sum claimed or any sum whatever from this company for any services rendered by him during the month of December last, and while the officers of this company are of the opinion that Mr. Schaub has forfeited all claims under his contract with this company by utter incompetence and neglect to perform the duties for which he was employed, yet the fact that Mr. Schaub has this day been discharged from the company's service on account of refusal to comply with the orders of the president, and the use of insubordinate and disrespectful language towards that officer of the corporation, has made the question of his right to receive compensation up to the present time of comparatively little importance, and not worth the trouble and expense of litigation; for which reason I have been directed to pay to Mr. Schaub, upon request, the sum claimed by him as salary for December, 1897, $200.61, and also compensation for the period from January 1, 1898, to January 16, 1898, both dates inclusive, at the same rate, amounting to $107.53. This amount will be paid to Mr. Schaub, or anybody presenting written authority to receive the same in his behalf, upon request, at the company's office.

"Very truly yours,

"CYRUS E. LOTHROP,

"Secretary & Treasurer."

"ARC WELDING COMPANY.
"Coffin System.
"MACHINES FOR WELDING METALS.
"DETROIT, 17th January, 1898.
"JULIUS W. SCHAUB, Esq.,
"City.

"*Dear Sir:* This morning I requested you to give me the drawing or tracing of the proposed machine for welding shells, referred to by you in your letter to me of January 5th last, which drawing or tracing was as recently as Saturday last upon the drawing-board in this office, but which has since been removed therefrom. At the time of making this request there was a drawing upon the drawing-board in the office, which, however, you informed me was not the drawing referred to in your letter. In reply to my request for the drawing or tracing referred to in your letter, you replied to me: 'That tracing I have given to my attorney. I cannot let you have that tracing. It is my record. I must have it.' You will remember that some time ago you made another sketch or drawing of a proposed machine for welding shells, in which the furnace was shown as placed underneath the seam to be welded, which sketch or drawing remained for some time upon a drawing-board at the company's factory, but which has disappeared from there. After your reply to me above quoted concerning the sketch or drawing referred to in your letter, I requested you to either give me the sketch or drawing that was on the drawing-board at the factory, or to make another like it, to which request you replied, 'I will see about that.' * * * [This portion of the letter contains a narrative of the conversation as reported in *Schaub* v. *Arc Welding Co.*] I state the conversation between us *verbatim* and in detail, in order that the reasons for the action taken by me in this letter may be fully understood by you.

"It has been already stated to you that, in the opinion of the officers and directors of the company, you have utterly failed to comply with the terms and conditions of your contract of employment, and have shown yourself to be incompetent to perform the duties for which you were employed. The question of terminating your contract of employment and discharging you from the service of the company on account of your incompetence and neglect of your duties has been seriously considered by the directors of the company. In the opinion of the directors of the

company, also, your absolute failure to attend to your duties for which you were employed has forfeited all claims on your part to compensation for the last month, at least. But your insubordinate and disrespectful language to me as the president of the corporation this morning, and your flat refusal to obey my orders, or to deliver to me the drawings made by you while in the service of the company and for the company's use, has made the question of whether or not you have heretofore properly performed your duties entirely immaterial. On account of your refusal to promptly comply with my orders, and the insubordinate and disrespectful language employed by you to me this morning, as above stated, the contract of employment between this company and yourself is hereby terminated, and you are discharged from the service of the company, to take effect from the date of this letter. You will deliver all drawings, letters, or other articles belonging to the corporation, and in your possession, to me at the earliest possible moment. Your discharge for the reasons given having made the question of continuance of your salary under your contract of employment immaterial, the treasurer of the corporation, Mr. Lothrop, has been directed to pay you, upon request, the sum of three hundred and eight dollars and fourteen cents, in payment of your services to date, as follows:

| | | |
|---|---|---|
| Salary for December, 1897, at $2,500 per year | $208 | 33 |
| Less deduction for 1 day's absence during month, as per statement rendered by you | 7 | 72 |
| Balance salary for December | $200 | 61 |
| Salary from January 1, 1898, to January 16, 1898, both dates inclusive, 16 days, at rate as above stated | 107 | 53 |
| Total salary to date | $308 | 14 |

" I desire to state, however, that while the treasurer has been directed to pay you this amount upon request, as I have stated, the company does not admit that you are entitled to receive this sum, and does not intend to waive, by payment to you of the same, any right to withhold payment of your salary or to terminate the contract of employment referred to on account of your incompetence and neglect to perform the duties required of you under your contract.

"Very respectfully,<br>
"Charles L. Coffin,<br>
" President."

It will be observed that the amount named in these letters includes the salary of Mr. Schaub, for the time stated therein, in both companies; and while one letter is signed by Mr. Lothrop as secretary, and the other by Mr. Coffin as president, it is not stated of what company.

After the two letters were received, Mr. Schaub sent a letter, which was received in evidence over the objection of counsel. We may as well say here, in relation to this objection, we think the letter admissible, in view of all the testimony, as part of the *res gestæ*. The letter reads as follows:

"DETROIT, MICH., January 17th, 1898.
"CHARLES L. COFFIN, Esq.,
"President,
"Detroit, Mich.

"*Dear Sir :* I am in receipt of your letter of January 17th, inclosing vouchers for my signature,—one for $200.61, for salary due me for December, 1897, and the other for $107.53, for salary from January 1, 1898, to January 16, 1898,—and notifying me that my contract of employment is terminated, and that I am discharged from the service of the company. I desire to say to you that the conversation set up in your letter does not correctly state what passed between us. Furthermore, I desire to call your attention to the fact that the sketch you asked for was placed in your hands a very few minutes after you made the demand for it, and I can recall no instance where I have failed to carry out your instructions promptly. In your letter you state that I am discharged from the service of the 'company.' Do you mean to say that I am discharged by you from the service of both companies with whom my contract of September 7th was made? If such is your intention, I will return to you at once, as you demand, all papers belonging to either company. I desire to say to you that I consider this discharge a willful one on your part, and without cause given by me; and I shall insist that the companies with whom the contract was made, and you as guarantor of that contract, respond to me in such damages as the law allows.
"Yours truly,
"JULIUS W. SCHAUB."

This letter was shown by Mr. Coffin to Mr. Lothrop, who testified he advised that it be unanswered. It was unanswered. After a delay of some days, Mr. Angell testified that, acting as the attorney of Mr. Schaub, he called Mr. Lothrop to the telephone and inquired of him if the letter of January 17th was intended as a discharge of Mr. Schaub from the employ of both companies, and that he was informed by Mr. Lothrop that it was so intended. Mr. Lothrop denied that any such conversation occurred, but, from the verdict it rendered, the jury must have found the conversation occurred.

Certain requests were preferred by counsel for defendant, which were refused by the court, except as embraced in the general charge. Among other things, he charged the jury as follows:

"The question for you to determine is, Was this man discharged from this company? The defendant contends that he was not, and that he voluntarily left the service of the company. The evidence upon the part of the plaintiff that tends to maintain the proposition of the plaintiff is that he had received a letter, which I have permitted to come in evidence, which is known as the letter of discharge, in which certain reasons were stated,—that he had become insubordinate and that he had become impertinent to the officers of the company, and that he was inefficient in the discharge of his duty,—and that for these reasons they saw fit to discharge him; and this letter that contained that discharge was a letter from the president of the Arc Welding Company, and not a letter from the president of the Welded-Barrel Company, the defendant in this case. While Mr. Coffin was the president of both of these companies, as I understand the testimony, it is claimed here that he acted for each of these companies separately. That would not be inconsistent at all with his duties, and he might be president of both of these companies, and have acted separately for each of these companies, even in the employment of this plaintiff. I do not think that the letter itself here is sufficient evidence to warrant you in finding that he was discharged from the employment of the defendant in this case, for the reason that this letter was written by the president of the Arc Welding Company, and not written by the president—in

the capacity of president, by Mr. Coffin—of the Welded-Barrel Company.

" But there is other testimony in this case which, as it is claimed, would show you that he was discharged from the service of the defendant, the Welded-Barrel Company; and the testimony that has been brought before you which it is claimed would tend to show this to you was the fact that a letter was written by him to Mr. Coffin, who was the president of the defendant company, asking him if he intended that this letter of discharge should apply to both these companies, and that he received no reply to it, and the testimony on this proposition upon the part of the defendant is that Mr. Lothrop, who was the secretary and treasurer of that company, directed the president not to reply to it.   Now, this may or may not have, according to the way you shall look at it, some weight in your mind as to whether he was or was not discharged by this company.   I deem it my duty to let this testimony go in and submit it to you, and you can give it such consideration as you think the weight of it is entitled to.

" Another thing the plaintiff claims tends to show that he was discharged from the defendant in this case is that Mr. Angell, counsel for the plaintiff in this suit, claims to have had a telephone communication with Mr. Lothrop, one of the officers of the defendant corporation, the Welded-Barrel Company, and that in that communication he asked Mr. Lothrop if this letter of discharge was intended to operate as a discharge from both these companies, and that, in substance, Mr. Lothrop replied to him that it was. Mr. Lothrop, counsel for the defendant in this case, takes the stand and denies having received this communication, and denies ever having communicated to Mr. Angell any such information, and states that not only did he not communicate it to him, but that it was not in accordance with his ideas of the situation, because he claims that in all communications made by Mr. Coffin to the plaintiff in this suit these communications were dictated by him, or made under his direction, with full knowledge of the facts; and he claims that he intended particularly that this letter of discharge should not apply to the Welded-Barrel Company, for the reason, as he claims, that the difficulties that had arisen concerning the not giving up of this sketch, or the impertinence used or the acts of insubordination claimed to have been committed on the part of the plaintiff

in this suit, were not directed against or in the employment of the defendant in this suit, but that he used this language and did these acts in the employment of, and operating for, the Arc Welding Company, and not for the defendant, the Welded-Barrel Company. This is the reason that he assigns why he did not make any such communication, or could not make any such communication,—because it was against his ideas. This testimony is submitted to you for whatever you shall deem it worth. You are to determine what the real facts are in this case.

"Another proposition comes up here, and that is, Was Mr. Lothrop, as secretary and treasurer, authorized or had he any power to make this discharge, or to bind this company by any such statement? That I conceive to be a question of fact, left for you to determine under the evidence, whether there is anything tending to show that Mr. Lothrop had any authority to bind the company, or to discharge the plaintiff in this suit, or to say anything that would bind the company as to his discharge.

"In order to find for the plaintiff, you must find that this man was discharged, that there were none of these acts claimed that would justify his discharge, and that not only was he discharged, but that he was discharged by an officer who had authority to discharge him. * * * If he was not discharged, or was not discharged by a person who was competent to discharge him, then it was his duty to have gone there and tendered his services to this company; to have offered to continue his employment with the defendant; and, if he failed to do that,—voluntarily left their employment,—he would not be entitled to recover damages in this suit."

In addition to the question of the admission of the letter in evidence of which we have already spoken, it is insisted that the so-called letter of discharge was not a discharge from the defendant company, and even though it be conceded the conversation occurred between Mr. Lothrop and Mr. Angell, as the latter claims, that it also appears affirmatively from the evidence that Mr. Lothrop was not authorized to bind the defendant by any statements he might make, and that plaintiff has failed to make a case.

As to the first of these propositions: While it is not necessary, in the disposition of the case, to pass upon the

question, I think that portion of the contract referring to the hiring was a joint contract. It can hardly be believed that plaintiff would have entered into this contract if he had supposed one of the parties thereto could discharge him, thereby cutting off one-half of his salary, and leaving him without employment for one-half of the time, but compelling him to work the other half of his time for the other company, and accept one-half the salary which he had expected to obtain when he entered into the contract. The language of the contract is:

"Said parties of the first and second parts do hereby hire and employ the said party of the third part for the period of three years * * * upon the terms and conditions hereinafter mentioned," etc.

Among those conditions is a provision as to what portion of the salary shall be paid by each company; also:

" It is understood and agreed that each of said first and second parties shall be answerable and responsible to said party of the third part for the observance and performance by it of the covenants, conditions, and agreements by it hereby entered into on its part to be kept, observed, and performed, only, and not for the observance and performance by the other party of the covenants, conditions, and agreements hereby entered into on its part to be kept, observed, and performed."

These conditions are not inconsistent with the theory of a joint hiring of the plaintiff by the defendants. The interests of the two companies were much alike. Each had the same officers and was under the same management. Mr. Schaub was to give each of them the same amount of time. It is not probable he would have hired or been hired except upon the expectation that he would work for both companies, and that his entire time would be employed, and that he would receive the salary agreed upon. It is undoubtedly true, as stated in *Schaub* v. *Arc Welding Co.*, 123 Mich. 487 (82 N. W. 235), that, as to the proportion of the salary which was to be paid by each of the companies to the plaintiff, the contract was several, and

not joint, but, as to the hiring itself, it was the joint act of the two companies. The circuit judge, however, held the contract was several, so that the defendant was not prejudiced in that respect by his decision.

I am also of the opinion that the correspondence shown by the letter from Mr. Schaub's attorneys of date January 15th, and Mr. Lothrop's reply thereto, and the letter of Mr. Coffin dated January 17th, operated as a discharge of the plaintiff from both companies. It is true, the last two letters were written on the letter-heads of the Arc Welding Company; but that is no more conclusive than though they had been written upon the letter-head of some hotel, or upon a sheet of blank paper. Mr. Schaub had not received his salary from either company for the month of December. Because of that fact he consulted a firm of attorneys. They sent a statement of his claim for salary in a letter addressed to both companies. After its receipt the president and secretary of both companies conferred together, and, acting in concert, prepared two letters, one of which is signed by Mr. Lothrop as secretary, and the other by Mr. Coffin as president. The agreement between all these parties was embraced in one contract. Mr. Schaub caused a communication to be sent to both companies, asking that his salary be paid. At the very time in which an answer to that communication is prepared by the secretary of the company, a letter is also prepared, which is signed and sent by the president. In this last-named letter attention is called to what had occurred between Mr. Schaub and Mr. Coffin. A claim was made that Schaub was not only incompetent, but was insubordinate and disrespectful. He is notified he is discharged from the company. It is then said:

"Your discharge for the reasons given having made the question of continuance of your salary under your contract of employment immaterial, the treasurer of the corporation, Mr. Lothrop, has been directed to pay you, upon request, the sum of three hundred and eight dollars and fourteen cents, in payment of your services to date, as follows."

The letter then contains a computation of the amount of Mr. Schaub's salary in both companies up to the day before the letter is written, and concludes by saying:

"I desire to state, however, that while the treasurer has been directed to pay you this amount upon request, as I have stated, the company does not admit that you are entitled to receive this sum, and does not intend to waive, by payment to you of the same, any right to withhold payment of your salary or to terminate the contract of employment referred to on account of your incompetence and neglect to perform the duties required of you under your contract."

There is no suggestion that Mr. Schaub is to continue to work for one of the companies, but he is notified the continuance of his salary under the contract is immaterial. His salary is figured up in both companies.   He is told it will be paid, but that by its payment it is not intended to waive the right to terminate the contract of employment. The letter of Mr. Lothrop commences by acknowledging the receipt of the letter from the attorneys of Mr. Schaub addressed to both companies, making a demand for the salary due Mr. Schaub for December from both companies; states that it is not conceded anything is due him, because of his incompetency and his refusal to obey orders of the president, and that he has been discharged for that reason.   He informs the attorneys the question of Mr. Schaub's right to compensation is not worth the trouble and expense of litigation;

"For which reason I have been directed to pay to Mr. Schaub, upon request, the sum claimed by him as salary for December, 1897, $200.61, and also compensation for the period from January 1, 1898, to January 16, 1898, both dates inclusive, at the same rate, amounting to $107.53."

This amount agrees with the computation made by Mr. Coffin in his letter, and includes the salary of Mr. Schaub in both companies.   There is no suggestion in this letter that it is not written on behalf of both companies, and that it is not intended as a full reply to the letter inclosing

a claim against both companies. There is no suggestion in the record that, while Mr. Schaub was incompetent to do the work for one company, he was competent to do the work for the other. Nor is it at all probable that what Mr. Coffin called "insubordination and disrespect" shown him as president of the Arc Welding Company would be any less distasteful to him as president of the defendant company. While the argument now made, that Mr. Coffin and Mr. Lothrop in conducting this correspondence were acting only for the Arc Welding Company, is ingenious, it does not appeal to us, under all the testimony, as having much force. The circuit judge, however, charged the jury that the letter from Mr. Coffin did not operate as a discharge of Mr. Schaub, and left it to the jury to say whether, taking into consideration all the other testimony in the case, Mr. Schaub was in fact discharged.

Counsel say it is a well-settled rule of law that agency cannot be proved by the acts or statements of the agent alone; citing *Hatch* v. *Squires*, 11 Mich. 185; *Three Rivers Nat. Bank* v. *Gilchrist*, 83 Mich. 253 (47 N. W. 104); *Swanstrom* v. *Improvement Co.*, 91 Mich. 369 (51 N. W. 941); *Somerville* v. *Railroad Co.*, 109 Mich. 295 (67 N. W. 320); and other cases. There is no doubt the rule is as stated, but, applying it to this case, it does not decide it in favor of the contention of defendant. The jury had the right to take into consideration Mr. Lothrop's relation to the defendant company, as disclosed by the evidence, from its inception to his last act on the part of the company, and all the correspondence, and the circumstances under which it was prepared and sent, for the purpose of deciding whether he was authorized to bind his company by the statements which Mr. Angell says he made. We think this testimony tended to show he had the authority to bind the company, and made a question of fact for the jury. *Hodges* v. *Power Co.*, 109 Mich. 547 (67 N. W. 564).

The other questions have been examined, but will not be discussed.

Judgment is affirmed.

The other Justices concurred.