### SCHAUB *v.* COFFIN.

DE FACTO CORPORATION—STOCKHOLDERS—UNPAID SUBSCRIPTIONS.
  Defendants, professing to act for and on behalf of a corpora-
  tion, made a contract of employment with complainant, who
  thereafter recovered a judgment against the corporation for
  breach of contract. *Held*, on creditor's bill filed, that com-
  plainant was entitled to relief against defendants, holding
  themselves out as stockholders, for unpaid subscriptions to
  stock, although no corporation was actually formed.

Appeal from Wayne; Hosmer, J. Submitted November 6, 1903. (Docket No. 107.) Decided January 12, 1904.

Creditor's bill by Julius W. Schaub against Charles L. Coffin and Cyrus E. Lothrop, impleaded with the Welded-Barrel Company. From a decree for complainant, defendants appeal. Affirmed.

*Angell, Boynton, McMillan & Bodman,* for complainant.

*Orla B. Taylor,* for defendants.

HOOKER, J.  In September, 1897, there were two corporations doing business in Detroit, one called "The Arc Welding Company," the other "The Welded-Steel Barrel Company." One Coffin was a member of both companies. The latter company was engaged in making welded steel barrels under patents obtained by Coffin, and at that time held by the Arc Welding Company, which was a company organized to hold and control similar patents, a large number of which had been issued upon Coffin's inventions.  The Welded-Steel Barrel Company appears to have owned no patent, but was operating under some sort of a license from Coffin, authorizing it to make barrels, given before the Arc Welding Company was organized. On September 7, 1897, Coffin and Lothrop made a contract with the complainant. professing to act for and on behalf of the Arc Welding Company and the Welded-Barrel Company, for the services of complainant for a period of years, each company to pay one-half of his salary.  At that time complainant was given to understand that the Welded-Barrel Company was a corporation organized a few day before, to make steel barrels.  Articles of association had been signed and filed with the county clerk of Wayne county and sent to the Secretary of State. They were rejected and returned by the latter officer upon the ground of the similarity of names between the Welded-Steel Barrel Company and the Welded-Barrel Company. Coffin and Lothrop signed said articles, the latter as trustee for Mrs. Medbury, who was a large stockholder in the other two companies.

The complainant entered upon the service of these companies, but was subsequently discharged, and has since recovered a judgment against each of the companies which employed him, and these judgments have been

affirmed by this court. *Schaub* v. *Arc Welding Co.*, 123 Mich. 487 (82 N. W. 235); *Schaub* v. *Welded-Barrel Co.*, 125 Mich. 591 (84 N. W. 1095). No property being found from which the judgment against the Welded-Barrel Company could be collected, a creditor's bill was filed against the Welded-Barrel Company, and testimony was taken before a commissioner. Defendants Coffin and Lothrop were sworn, and testified that the Welded-Barrel Company was intended to take the business previously carried on by the Welded-Steel Barrel Company; that an arrangement was made with one Beckwith, of Chicago, to promote the new company, the arrangement being that the new company should be capitalized at the sum of $150,000, of which $125,000 was to be paid by the transfer of two licenses to manufacture barrels, then owned by the Welded-Steel Barrel Company, and Beckwith was to sell $25,000 of treasury stock. Beckwith never sold this stock, and the witnesses testified that the scheme was abandoned, and that the licenses were never transferred to the new company.

Thereupon counsel for the complainant amended the bill, making the stockholders parties, and praying relief against them, upon the ground that they had not paid their subscriptions. The testimony was taken in open court, and Coffin and Lothrop again testified. The theory of the defense was changed, and it was claimed that the stock subscribed was paid for by transferring the licenses mentioned to the Welded-Barrel Company. Neither witness professed to know that the assignment was actually made and delivered, and the reason for changing their testimony was the fact that Lothrop had found the copy of a letter in his copybook written to Beckwith. The following is a copy of it:

"Detroit, Mich., 31 Aug., 1897.
"W. L. Beckwith, Esq.,
    "1521 Marquette Bldg., Chicago.
  "*My Dear Sir:* I inclose herewith certified copies in triplicate of license from Arc Welding Co. to Welded-

Steel Barrel Co., and also of bill of sale from latter company to the Welded-Barrel Co.

"I am having prepared copies of the minutes of the first stockholders' meeting, and will send you same in a day or so. Please credit Mr. Coffin with $76.50 paid Sec'y of State,—$75 franchise fee, and $1.50 recording articles of association.          Very truly yours,
                                             "C. E. Lothrop."

Upon the strength of this letter they expressed the belief that they were mistaken in their testimony before the commissioner, and that the licenses were actually assigned.

We think this but slight evidence that the Welded-Steel Barrel Company transferred its licenses to the new company, and no evidence whatever that Coffin released it from the payment of royalties, which we infer from the testimony to have been a condition of such licenses. It is admitted that the value fixed, i. e., $125,000, was upon the basis of an exclusive right to manufacture without payment of royalty.

The former testimony that the project was abandoned is corroborated by the fact that the stock was never issued. The franchise fee of $76.50 was returned by the Secretary of State and accepted by Mr. Lothrop. Coffin is still the creditor of the concern for $4,000 advanced in connection with the project, and apparently never attempted collection. The Welded-Steel Barrel Company continued in existence and business for a year or two, and finally was succeeded by the Welded-Steel Barrel Corporation, to which Coffin says the Welded-Steel Barrel Company transferred its licenses, which were the same or similar to those previously referred to.

It is manifest that, whatever may have been contemplated or done, the Welded-Steel Barrel Company, and not the Welded-Barrel Company, has had the benefit of the licenses, and the stockholders who now ask to be relieved upon the ground that they paid their stock with $125,000 worth of alleged property, i. e., licenses to manufacture, have had full benefit of said property, which

they applied to another project and another concern. We are convinced that the project was never carried out. The Welded-Barrel Company never obtained the property which was to be valued at $125,000 for stock-jobbing purposes, or, if a formal writing was made, it was never delivered, but was held until Beckwith should perform his undertaking; or, as Coffin testified, they were made, but kept in his possession, "what you might call in escrow, pending the performance by Mr. Beckwith of his part of the agreement." This project failed, and the stockholders. of the Welded-Steel Barrel Company made other disposition of the property, as heretofore stated. Having reached this conclusion, it is only necessary to add that the complainant had a right to recover against the Welded-Barrel Company as a *de facto* corporation, and his judgment should be paid by the persons who held themselves out to him as stockholders.

The decree of the circuit court is affirmed, with costs.

The other Justices concurred.