## Western Union Telegraph Co.
## v.
## E. W. Valentine.

Telegraph company—Delay in delivering dispatch.—An action on the case against appellant, a telegraph company, for damages for delay in delivering a dispatch. *Held*, that as appellant, through its agent, had full notice of the importance of the prompt delivery of the dispatch, appellee can recover the damages he lost by its negligence, viz., the difference between the year's salary he would have received from the party he had contracted with, and for whom he would have worked had he received the telegram in time, and what he made during the year.

Appeal from the Circuit Court of McLean county; the Hon. O. T. Reeves, Judge, presiding. Opinion filed December 4, 1885.

Messrs. Stevenson & Ewing, for appellant.

Messrs. PORTER & HUGHES, for appellee.

PLEASANTS, J.   In December, 1882, appellee, a resident of
Bloomington, was employed as a traveling salesman of tobacco
and cigars for a Chicago house.   Early in that month, on the
train from Bloomington to Chenoa he fell in with Mr. P. M.
Schwartz, a cigar manufacturer of Pontiac, and an acquaint-
ance of several years, who, having learned in conversation
with him that his engagement was about to expire and would
not be renewed, asked how he would like to work for him.
The subject was then talked over but no conclusion reached.
Appellee told him he had not thought of it and was negotiat-
ing with some parties in Chicago, but would consider it and
see him again.   A week later he stopped off at Pontiac for
the purpose and had some further conversation with him, in
the course of which Schwartz said if he employed him it
would be necessary to make some change in his route as he
already had a traveling man over part of it.   No contract was
then made between them, but the subject was left under con-
sideration.

On the 21st appellee sent him, by mail, the following letter:

" Office of E. Hoffman, 183 and 187 Madison street.

CHICAGO, ILL., December 21, 1882.

P. M. SCHWARTZ, Esq., Pontiac, Ill.

*Dear Sir:*—I am settled up here and ready for further, etc.
I was over to look at the stock of Straus and Hamburger and
find they have very fine stock.   They left word for me to be
sure and be here on the 24th.   But I have concluded I would
prefer to travel for you for I feel confident if everything goes
O. K. that I will do better.   Of course I may keep my ap-
pointment with them and pay them the visit they desire.

I have never sold goods for a factory and, as you say, may
do better than with a jobber.   I will *contract* my first year
with you for thirteen hundred dollars, and if I am worth more
money for the year after we can determine that afterward,
and I will endeavor to sell all the goods for you in my power.
I would want one or two five-cent brands, also unflavored, to
take my route up January 1st to 15th.   I think your goods

will please my trade and if not I can't be blamed for it.  Hoping to hear from you by first mail or telegraph to Bloomington, Ill., so I may know what to do,

Yours truly,

E. W. VALENTINE.

P. S.—How many brands have you. to carry regularly?  I can give you all the personal and bank reference you want."

Schwartz ac o.dingly telegraphed him to Bloomington as follows:

" Dec. 23, 1882.

E. VALENTINE, Bloomington, Ill.

Can you come up to-morrow?  Have to make some changes in route.  Answer.

P. M. SCHWARTZ."

Appellee, however, was detained by business in Chicago and did not receive it until his  return home,  on the 20th, but on the 23d he wrote out  a dispatch for defendant to transmit to Pontiac, as follows :

" CHICAGO, ILL., Dec. 23d.

P. M. SCHWARTZ, Pontiac, Ill.  Not heard from my letter. Please answer.  Canal and Adams.

VALENTINE."

This he delivered on the morning  of that day, between ten and eleven o'clock, to D. J. Shine, telegraph operator, for the Pennsylvania Company, at the  union depot,  corner of  Canal and Adams streets,  where dispatches were  received to be sent over the Western Union lines for the telegraph company.   It is the railroad telegraph  office  proper,  but also the Western Union office for the receipt of  messages,  which are sent from it to the central office of  the telegraph company and thence directly transmitted to the  party addressed.   Messages by the telegraph company from other places to persons in Chicago are also  first received at the  central office  and thence sent, either directly to  the party,  or  repeated to a distributing  office for delivery from it, by the  messenger boys there employed.   The railroad telegraph office at the Union Depot was not a distributing office of  the telegraph company.   The one  nearest to it

was at the Washington Hotel, about a block and a half distant.

Its agency for the company was limited to receiving messages for it and transmitting them to the central office. When this dispatch was delivered to Shine he was fully informed of its object, of the negotiation pending between appellee and Schwartz, and of the contents of the letter referred to in it. He and the other operator in the office were acquaintances and friends of appellee. The evidence tends to show that he was told by appellee that he wanted the answer sent to that office and therefore directed him to add to it, for that purpose, the words "Canal and Adams," as they appear thereon. He says that as an operator he understood they meant his office, and that the messenger boys at the Washington Hotel were in the habit of bringing there dispatches so addressed.

This dispatch he promptly transmitted to the central office, whence it was sent to Schwartz at Pontiac and there received by him during the same forenoon. After dinner on the same day Schwartz delivered to defendant's operator at Pontiac for transmission, the following:

"PONTIAC ILL., Dec. 23, 1882.

To E. VALENTINE, corner Canal and Adams streets.—All right if we can arrange route. Have some changes to make. Can you come down to-morrow ? Answer.

P. M. SCHWARTZ."

This was received at the central office in Chicago at two o'clock P. M. of the same day, but not by appellee until the 1st of January when he called there to inquire for and obtained it. He remained in and about the Union Depot office during all day of the 23d December, after he sent his to Schwartz, frequently inquiring of Shine and the other operators if any answer had been received. So also throughout the following day until evening, when he engaged with Straus and Hamburger by the month, at $100 per month ; worked two months for them and was discharged; remained without employment, though he diligently sought and expended something like $200 to find it, until the following fall, when he went to work for a Peoria house, at $75 per month, and received therefor $300, making in all the sum of $500 for that year's labor.

He brought this action, in case, to the November term, 1883, to recover the difference between what he so received and what he claims he would have received from Schwartz, as damages for alleged negligence of the company in not promptly delivering the dispatch of December 23d, above quoted. The cause was tried by jury, on a plea of not guilty, at the May term, 1884, and a verdict rendered for the plaintiff for $500, which was set aside. A new trial by the court without a jury, at the February term, 1885, resulted in a finding and judgment thereon, for plaintiff, for $650 damages and the costs; exceptions were duly taken, and the record is brought here by appeal.

A brief statement of our view upon what we regard as the controlling points in the case must suffice for answer to those more specifically urged by counsel. If the dispatch of December 23d, from Schwartz to appellee at Chicago, had been delivered promptly, it would have made, in fact, a contract between the parties, in the interest of appellee. That is to say, his offer by the letter of the 21st having been made without reservation as to route, and with the distinct information that if he should be employed some changes must be made in it, was a concession to Schwartz of the right to dictate them, at least within reason, and Schwartz's answer "all right" was an acceptance, at least upon that condition; so that, although he added "if we can arrange route; have some changes to make," and whatever may be its effect, in technical strictness, there was in fact no "if" about it. Any change to be reasonably anticipated was a matter of indifference to him, and his obtaining the employment upon the terms he proposed was reasonably certain.

It is unnecessary to refer particularly to the other facts in proof—the expectation and conduct of Schwartz with reference to it—tending to support this conclusion. The value of this contract is also certain. It was not for gains or profits, which might be speculative or contingent, but for a salary definite, fixed and sure.

Its loss to appellee was the direct, proximate and natural effect of the failure to deliver promptly the dispatch in question.

Of the importance of this dispatch and of its delivery on

that day, if not sufficiently apparent on its face, appellant, through its agent, had full notice, and the damages claimed were such as ought to have been within its contemplation.

The questions of negligence on the part of appellant and also on the part of appellee in respect to the address given, his efforts to obtain employment or otherwise, were questions of fact, upon which the finding of the court is sufficiently sup-ported by the evidence. Holding these views there is no occasion to notice the points of law presented or the authorities cited.

Judgment affirmed.