ROBERT D. CHILD v. THE DETROIT MANUFACTURING COMPANY.

*Contract of employment—Discharge of employé—Practice—Cross-examination—Pleading—General issue.*

1. Facts relating to the matters given in evidence on the direct examination of a witness, and which have an important bearing upon the issue, may be shown on his cross-examination.
2. A defense which is confined to a refutation of the facts stated in the declaration, and necessary to be proved in order to enable the plaintiff to recover, may be made under the general issue.

Error to Wayne. (Reilly, J.)  Argued October 4, 1888. Decided November 28, 1888.

*Assumpsit.*  Defendant brings error.  Reversed.  The facts are stated in the declaration.

*Corliss, Andrus & Leete,* for appellant, contended:

1. The incompetency of plaintiff, and his disobedience of orders, were questions of fact, and should have been submitted to the jury; citing Smith, Mast. & Serv. 151, 153; as should testimony tending to establish lack of diligence, as a ground for discharge; citing *Alberts v. Stearns,* 50 Mich. 350.
2. In this State the general issue in *assumpsit,* as a general rule, denies and puts in issue every fact, and every combination of

facts, essential to the plaintiff's cause of action, and set up in his declaration; citing *Wilson v. Wagar*, 26 Mich. 452; *Snyder v. Willey*, 33 Id. 489; *Ingalls v. Eaton*, 25 Id. 82.

3. The only evidence offered to show authority for the execution of the contract sued upon was the statements of plaintiff that Mr. Christie, who signed it, was acting as secretary of defendant at the time. A corporation cannot be held to have contracted unless by such officers as have express authority; citing *Lockwood v. Boom Co.*, 42 Mich. 537; *Iron Mine v. Bank*, 44 Id 344.

4. A party dealing with the agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority; citing *McLellan v. File Works*, 56 Mich. 579; *Bank v. Corset Works*, 68 Id. 620; *Rice v. Club*, 52 Id. 90.

*Bowen, Douglass & Whiting,* for plaintiff, contended:

1. No evidence was admissible under the plea of the general issue except that plaintiff's exclusive time was not given to the business; citing Smith, Mast. & Serv. 170; *Speck v. Phillips*, 5 Mess. & W. 279; *Lush v. Russell*, 5 Exch. 203; and the decisions of this Court also sustain this rule; citing *Champlain v. Stamping Co.*, 68 Mich. 238.

2. The plea and notice should have informed plaintiff that the defense sought to be made. was intended, so that he could have been prepared to meet it; citing *Rawlings v. Cole*, 67 Mich. 431.

3. In the absence of any provision to the contrary, it will be presumed that the president and treasurer of a corporation have the authority to make all necessary contracts in transacting its ordinary business; citing *Iron Works v. Bresnahan*, 60 Mich. 339.

SHERWOOD, C. J. The plaintiff entered into a written contract with the defendant for his services for one year, as traveling salesman, in selling a certain patent cooking crock, and other articles of the defendant's manufacture. The following is a copy of the written contract between the parties:

"DETROIT, MICH., April 18, 1887.
"MR. ROBERT D. CHILD,
    "Baltimore, Md.
"*Dear Sir:* We desire to employ you as a traveling

salesman for a period of one year from this date, at a salary of twenty-four hundred dollars ($2,400) per annum, payable semi-monthly, in amounts of $100 each. We also will allow your expenses on the road at such times as you are actually engaged in selling our goods or working under our directions. In consideration of the above salary and allowance for expenses you are to give us your exclusive time and services in the sale of our Excelsior Cooking Crock, and such other articles as we may manufacture or handle from time to time.

" Yours very truly,
'DETROIT MANUFACTURING CO.,
"Wm. V. Christie, as Treas.
"The above proposition is hereby approved and accepted.
"ROBERT D. CHILD."

The plaintiff's declaration contained a special count upon the contract, which, after stating the substance of the agreement, continued as follows:

"In pursuance of such contract, plaintiff entered into defendant's service on the 18th day of April, 1887, and continued to work for it, and perform his duties fully, and in all things conformed to the spirit and letter of said contract from said date, April 18, 1887, until on or about July 18, 1887.

"That on or about July 1, 1887, said defendant, with-,out cause or provocation, discharged plaintiff from its services and employment, and refused to permit plaintiff to serve or work for it longer as its agent under said contract, and from further performing said .contract on his part, although the plaintiff was ready and willing to continue to perform on his part to the end.

"And said defendant also refused (although repeatedly requested so to do) to pay plaintiff for the service then at said date already performed in his own behalf; and by reason of such breach on defendant's part plaintiff was thrown out of employment, and has been greatly damnified, to wit, in the sum of two thousand dollars."

The common counts in *assumpsit* were added.

Defendant, by its attorney, pleaded the general issue.

Trial was had before Judge Reilly, in the Wayne circuit, who directed a verdict for plaintiff for $1,046.25

damages.    A review on error is asked by the defendant.

The plaintiff was the only witness sworn on the part of the plaintiff.    His testimony was to the effect that he resided in Baltimore, and had been, previous to making the contract, a traveling salesman several years; that he engaged to the defendant under the contract above referred to, and worked for it in making sales of the crocks in Baltimore, Philadelphia, and Wheeling, and gave his time exclusively to the business of selling the company's cooking crocks for defendant from the time he was employed until July 18, 1887, and held himself in readiness for the defendant's service until sometime in September following; that he was visited by an agent of the defendant in June, who told him to wait in Baltimore until the company should write him; and that the company did soon thereafter write him as follows:

                                "DETROIT, July 1, 1887.

"ROBERT D. CHILD,
            "Baltimore, Md.

"*Dear Sir:*  We desire to take advantage of your verbal agreement when you were here with us, viz., that, if you failed to sell crocks in paying quantities, you would vacate your position, thereby canceling our agreement with you.    We see no prospect of your making your engagement with us pay, and we think, in the interest of all concerned, that it had better be terminated at once, leaving you free to place your services elsewhere, as we cannot employ them at any advantage to ourselves.    We are perfectly willing to treat the matter in a spirit of equity and fairness, and if you are willing to meet us on the same ground, the matter can be easily adjusted without any feeling or unnecessary expense.    Trusting your disposition is in accord with our own, and awaiting your early, we are,    Yours truly,
                    "DETROIT MANUFACTURING CO.
                        "Wm. V. Christie, Treas."

Plaintiff also gave in evidence his letter replying to the above, in which he said he denied the verbal agree-

ment alluded to. Said he told defendant he thought he could sell 50,000 crocks during the year, when he made his contract of service, but did not guarantee to do so; that, if the crock was a selling article, he could sell as many as any man it could get; that he stood by his agreement, and would await a remittance of the amount due him, and that, unless received by the 11th of July, he should enter suit for what it owed him, and that he was willing to work, and could sell the company's crocks; that he was ordered to come to Baltimore, and to await instructions when to go and what to do.

He further testified he had never received any reply to his letter, and nothing from the company, and that he did not regard defendant's letter to him as a discharge from its service; that he did not make an effort to sell its goods only about two weeks after the 4th of July, and did not get another situation until about the 16th of February following, although he made an effort to do so; that from April 18 to June 7 he received from the defendant $400, of which $200 was for expenses; that he made sales of crocks before receiving defendant's letter, and none afterwards; that two of these were repudiated by the defendant, and that the third amounted to only about $70.

Upon the cross-examination of this witness the defendant sought to prove by him that when it employed the plaintiff he made false representations to defendant, and that, after he engaged in defendant's service, he refused to obey instructions of defendant; that plaintiff did not perform the defendant's work as in his contract he promised to do, and refused to obey the orders of the defendant, and offered the letters of plaintiff to show that fact; that the plaintiff did not work enough to earn his salary, and offered to show what he did do while in the employment of the defendant.

Defendant's counsel offered to show further the pay plaintiff received from other parties while he claimed to have been in the employ of defendant under said contract.

This testimony was all ruled out by the circuit judge upon the objection of incompetency and immateriality. These matters were all proper to be given in evidence upon the cross-examination of the plaintiff. They all related to the matters given in evidence on his direct examination, and had an important bearing upon the issue. It was error to exclude them.

After the plaintiff rested his case, the defendant called to the witness stand William V. Christie, who testified that he was secretary of the defendant corporation, and, together with Mr. Paulison, its president, met the plaintiff, and gave him full directions how the goods were to be sold, and the method of conducting the business, and gave him specific instructions in regard thereto. Defendant then proposed to show the amount of goods plaintiff sold, and that he sold the same contrary to instructions; that he sold scarcely any goods; that he might have sold large quantities; that his work was not done according to agreement, and as he had promised, and was by reason thereof worthless to the defendant. This testimony offered was objected to.

We think this all should have been allowed. It was responsive to the case made by the plaintiff, and, if found to be true, would have justified the plaintiff's discharge. It was also testimony which should have been left to the jury, and would have rendered the direction given to them by the court improper. The business which the plaintiff undertook to perform for the defendant was important, and was to be done under the direction of the latter. It required both experience and judgment, and which it was the duty of plaintiff to bring to bear in the performance

of the service promised; and if he failed in this, and neglected or refused to obey the instructions of the defendant, it was its right and privilege to discharge him.

We think the court in this case also erroneously excluded the testimony tending to show the plaintiff's lack of diligence, his neglect of duty, and want of capacity in the performance of his contract with the defendant while in its service. It went to the merits of plaintiff's case, and should have been admitted. We are inclined to think enough was admitted, however, to make the taking of the case from the jury error.

The defendant's defense is not made to an action for wages, where the plaintiff's ability was known to the employer when the contract for service was made, and which was for such service as the plaintiff had the ability to perform, and was performed accordingly, as in the case of *Champlain v. Stamping Co.*, 68 Mich. 238 (36 N. W. Rep. 57), but here the defendant sought to show and rested its defense upon the facts that the plaintiff did not make the effort, was negligent, and refused to do the very things he had promised in his contract to do; that he had neither the ability nor disposition to do the work he had promised. In other words, he utterly failed to perform his part of the contract, and that what he did do was worthless. The defense offered was confined to a refutation of the facts stated in the declaration, and necessary to be proved in order to enable the plaintiff to recover, and the court should have allowed it to have been shown under the issue made. The other questions presented we need not discuss:

The judgment must be reversed, and a new trial granted.

The other Justices concurred.