ROBINSON *v.* WESTERN UNION TELEGRAPH CO.

1. CONTRACTS—OFFER AND ACCEPTANCE—TELEGRAPHS AND TELE-
PHONES—NEGLIGENCE.

Where plaintiff negotiated orally with an engraving concern
to enter its employ, and later wrote that he would enter its
employ at $37.50 a week for six months, and $40 thereafter,
which offer the company accepted after certain further
negotiations, saying that if plaintiff made good after six
months they would give him the increase, and that he would
be required to work eight or nine hours a day, and at a stated
rate overtime; plaintiff replying that the acceptance was
satisfactory if his employment was to be steady, and defend-
ant further answering favorably, there was a completed con-
tract, though the employer expressed a wish to have him re-
port by September 20th, and he notified the company by
letter that he could not arrive before September 27th; that
arrangement being afterwards acquiesced in by the employer.

2. SAME—STATUTE OF FRAUDS—TERM OF EMPLOYMENT—MASTER
AND SERVANT.

The contract was valid. It was not a contract for a year's em-
ployment to commence at a later time; although plaintiff
had declared in oral negotiations that he would not accept
employment for less than a year. And the correspondence
contained the completed agreement.

3. SAME.

Where it is possible that a contract may be completed within
a year, it is not within the statute.

4. TELEGRAPH AND TELEPHONES—NEGLIGENCE—CONTRACTS.

Defendant, a telegraph corporation, was liable to plaintiff for
negligence in transmitting a message to a concern with
whom he had entered into a contract of employment and
who broke off the agreement on receiving a reply to their
telegram asking if he would arrive on the 27th, notifying
them that he would wire on the 27th; plaintiff having in fact
offered for transmission a message replying that he would
*arrive* on the 27th,

5. SAME—BREACH—WRONGFUL TERMINATION OF CONTRACT.

Any act of a servant which injures or tends to injure his mas-
ter's business justifies a dismissal.

6. SAME.
   The master was justified in terminating his contract of employ-
   ment on receiving the reply, which tended to cast suspicion
   on the integrity and trustworthiness of the servant.

7. SAME.
   Whether the discharge under such circumstances was reason-
   able was a question of fact.

8. SAME—EVIDENCE—CONCLUSION.
   Testimony of the employer was admissible to show that the
   effect of the error was to arouse his suspicion of the employé,
   and that, if the message had been received as plaintiff wrote
   it, plaintiff's contract would not have been terminated.

9. SAME — DAMAGES — EVIDENCE — BURDEN OF PROOF — WRONGFUL
   DISCHARGE.
   In view of the rule that the burden rests on the master to
   show that the servant by reasonable diligence might have
   obtained other employment, a judgment for the amount lost
   by plaintiff was, in the absence of such evidence, rightly
   rendered.

Error to Kent; McDonald, J. Submitted January 17,
1912. (Docket No. 96.) Decided March 29, 1912.

Case by Walter O. Robinson against the Western Union
Telegraph Company for the negligent transmission of a
message. Judgment for plaintiff. Defendant brings
error. Affirmed.

*Bundy, Travis & Merrick* (*George H. Fearons*, of
counsel), for appellant.

*Harrington & Warner*, for appellee.

STONE, J. This is an action on the case to recover dam-
ages for alleged negligence in erroneously transmitting a
telegram filed by the plaintiff with defendant, by means
of which the plaintiff alleges that he was deprived of the
benefit of a contract of employment. The case was tried
before the circuit judge, without a jury, and, after filing
written findings of fact and conclusions of law, a judg-
ment was rendered thereon in favor of the plaintiff for

$508 damages, whereupon certain amendments were proposed by the defendant to such preliminary findings of fact and conclusions of law, and the circuit judge thereupon settled and perfected the findings of fact and conclusions of law, and the same were amended to read as follows:

## "Findings of Fact.

" (1) The plaintiff was the proprietor of an engraving business in the city of Grand Rapids, Mich. In the summer of 1909 he entered into oral negotiations with S. C. Toof & Co., of Memphis, Tenn., with a view of entering its employ as an engraver; the plaintiff being an expert in that trade. At the time of the original negotiations the plaintiff informed S. C. Toof & Co.'s representative that he would not contract to enter their employ for less than one year. These negotiations were temporarily abandoned, but later in the same year were reopened by correspondence between the plaintiff and S. C. Toof & Co., which correspondence consists of the plaintiff's exhibits A to G, inclusive, here following:

"Exhibit A:

" 'Grand Rapids, Mich., Aug. 24, 1909.
" 'S. C. Toof & Company,
" 'Memphis, Tenn.
" ' *Gentlemen:*
" 'Your announcement received, and think it very cleverly gotten up throughout.

" 'You are going after the business with the spirit of success, which will come just as sure as your lithograph work came. Progress and quality harmonizing will build up an immense business along this branch in Memphis same as it has in other cities.

" 'Now, Mr. Zahn, to make this letter brief and to the point, my prospective buyer has decided to remain in Chicago with the same firm he now is with, for the present at least. Therefore, I am, you might say, at the starting point of several weeks ago; but Mrs. Robinson and I have talked the matter over between ourselves and I have decided that if you can see your way clear to pay me $37.50 per week, with an increase of $2.50 per week at the end of six months, I will be at your service.

" 'I have been at my trade 13 years and am familiar

with both steel die and copper plate engraving, and do
sunken dies as well.  However, you have some samples
of my work and should you wish to see them again, I will
gladly mail some to you upon request.  Of course, our sam-
ples hafto speak as to we engravers' ability, same as the
grade of work your firm turns out speaks as to skill of the
workmen you employ.

"'Of course, if I were to come with you, my two presses
would be for sale, which we bought new one year ago
next month, and are today in perfect working order.  The
hand press is a King ·No. 4.  The plate press a Kelton,
12 in. bed.

"'Hoping to be favored with an early reply,

"'Very truly yours,

"'W. O. Robinson.'

"Exhibit B:

"'Memphis, Tenn., Aug. 28, 1909.

"'Mr. W. O. Robinson,

"'Grand Rapids, Mich.

"'Dear Sir:

"'Yours of the 24th to hand and contents carefully
noted.  We will thank you to again mail us samples of
your work on both the copper plate as well as the steel die
line, so that we can talk the matter over here.  The time
has arrived when we want to push this branch, and we
request you to let us hear promptly to this so that we may
close with you, if so decided, after receiving your answer.

"'As to the presses.  You understand the minute a press
has been in use, it is considered a second-hand machine.
Of the King No. 4 we can make no possible use, that size
work being done on our power press. . The Kelton we
may arrange to take over.  What value do you put on it?

"'Kindly let us hear from you.

"'Yours truly,

"'S. C. Toof & Co.

"'Dict. Zahn.'

"Exhibit C:

"'Grand Rapids, Mich., Aug. 30, 1909.

"'S. C. Toof & Company,

"'Memphis, Tenn.

"'Gentlemen:

"'Replying to your favor of the 28th inst. requesting
samples of my work, I have forwarded under separate

cover a very liberal supply of the different branches of the engraving I do and trust that the same will meet with your approval. And will ask that they be returned to me as soon as you have criticised them carefully.

" 'As to the presses, I do not care to sacrifice a great deal on them, as I can easily get rid of them at a good figure even later on, as there is a good demand for them. However, should you want the Kelton, I would not feel that I could sell it under $110.00 f. o. b. Grand Rapids.

" 'I have enclosed rough idea of our calendar plate I have been working on at idle times. Think, however, you can see the idea I have carried out.

" 'Kindly let me hear from you as soon as possible with return of samples.

" 'Yours truly,<br>" 'W. O. ROBINSON.'

" Exhibit D :

" 'MEMPHIS, TENN., Sept. 4, 1909

" 'Mr. W. O. ROBINSON,
" 'Grand Rapids, Mich.

" '*Dear Sir:*

" 'Yours of Aug. 30th, also the samples, to hand, and as per your request we return them herewith.

" 'We accept your proposition to enter our employment for $37.50 per week for a period of six months. If at the end of that time you are making good, your salary is to be increased to $40.00 per week. This is to be a flat rate for either 8 or 9 hours per day, whatever number of hours we may work. Should it any time become necessary for you to work over 9 hours at engraving, then you will put your time in at the same rate per hour, based on the 8-hour working day, viz.: with your salary at $37.50, it shall be 78 cents per hour; when it is $40.00, 83 cents per hour. We never work on Sundays.

" 'As to the Kelton 12-in. press, you may ship it by freight for $110.00, f. o. b. Grand Rapids, with the understanding that you come with us.

" 'If all this is satisfactory, kindly inform us when you will come.

" 'Yours truly,<br>" 'S. C. TOOF & Co.<br>" 'OTTO ZAHN, Gen. Manager.

" 'Dict. Zahn.'

" Exhibit E:

" 'Grand Rapids, Mich., Sept. 8, 1909.
" 'S. C. Toof & Company,
" 'Memphis, Tenn.
" ' *Gentlemen:*
" 'Your letter of the 4th inst. at hand (also samples).

" 'Terms stated in your letter of the above date mentioned are satisfactory providing it is understood and agreed to that my employment during the term of this contract shall be steady. No broken time or lay off. But as to the presses, I have made different arrangements for them.

" 'I am not in any doubt as to my giving you satisfaction with my work. My little affairs will require until about Sept. 18th to arrange and I will try and report on or about Sept. 20th.

" 'Kindly let me hear at an early date.
" 'Very truly yours,
" 'W. C. Robinson.'

" Exhibit F:

" 'Memphis, Tenn., Sept. 11, 1909.
" 'Mr. W. O. Robinson,
" 'Grand Rapids, Mich.
" ' *Dear Sir:*
" 'Your favor of recent date is to hand.

" 'It is our intention to give you unbroken employment without any lay-off on our part, excepting on holidays.

" 'Should you lose any time on our account, excepting holidays, then we will be perfectly willing to pay you for same.

" 'On the other hand, we will not pay for time you may lose on your own account, whatever may be the cause.

" 'Hoping this will be satisfactory, and that we may see you here by Sept. 20th, we are.
" 'Yours truly,
" 'S. C. Toof & Co.
" 'Otto Zahn,
" 'Gen. Manager.

" 'Dict. Zahn.'

"Exhibit G:

"'GRAND RAPIDS, MICH., Sept. 15, 1909.

"'S. C. TOOF & COMPANY,
            "'Memphis, Tenn.

"'*Gentlemen:*

"'Your letter of the 11th inst. is satisfactory as to the unbroken employment, lay-off and holidays, and I am trying my best to get everything in readiness here.

"'But I do not see how I can possibly be in Memphis on the 20th. But I will be there no later than the 27th, and will try my best to be there before the 27th. Trust, however, this will not put you out any. I will write you very soon again and let you know just what date I can leave here.

"'Yours very truly,
            "''W. O. ROBINSON.'

"(2) On September 24, 1909, S. C. Toof & Co. telegraphed from Memphis to the plaintiff in Grand Rapids as follows: 'Will you be here Monday? Answer.' (Plaintiff's Exhibit H.) This telegram was an inquiry as to whether the plaintiff would arrive in Memphis on September 27, 1909, to enter the employment in accordance with the terms of the correspondence comprising the plaintiff's exhibits A to G.

"(3) Almost immediately, and on the same day, the plaintiff delivered to the defendant at its branch office in the Gunn building in Grand Rapids, the following message for transmission:

"'S. C. TOOF & Co.,
            "''Memphis, Tenn.

"''Will arrive Tuesday morning. Advance transportation by wire.
                    "''W. O. ROBINSON.'
            "(Plaintiff's Exhibit J.)

"The plaintiff at the time of delivering this message for transmission explained to one Cudahy, who was an agent of the defendant and in charge of their branch office, the circumstances surrounding the sending of the message, and that it was a notification to S. C. Toof & Co. that he would arrive in Memphis on Tuesday morning to enter their employ. Prior to the sending of this telegram by the plaintiff, there had been no talk or correspondence whatever between him and S. C. Toof & Co. with reference to their advancing his transportation, either by wire or otherwise.

"(4) The defendant accepted said message for transmission, and undertook the transmission of the same, but prior to its delivery to S. C. Toof & Co., in Memphis, some agent of the defendant changed it, and it was delivered to S. C. Toof & Co. by the defendant as follows:

" 'S. C. Toof & Co.,
    " 'Memphis, Tenn.
" 'Will wire Tuesday morning. Advance transportation by wire.
                        " 'W. O. ROBINSON.'
        "(Plaintiff's Exhibit I.)

"There is no evidence in the case explaining how this error in transmission occurred or tending to show that the defendant was not negligent in erroneously transmitting the message, except the plaintiff's testimony that the manager of the defendant's Grand Rapids office had stated to him that the mistake occurred in the defendant's Chicago office.

"(5) Acting in good faith upon the wording of this message as received, and believing that the plaintiff had sent the message as it was delivered, and that his intention was not to arrive on the following Tuesday morning, but to wire or telegraph on that day, S. C. Toof & Co. immediately, and on September 24, 1909, sent the following message to the plaintiff:

" 'W. C. ROBINSON,
    " 'Grand Rapids, Mich.
" 'Consider trade off—have made other arrangements.
                        " 'S. C. TOOF & Co.'
    "(Plaintiff's Exhibit J to deposition of witness Zahn.)

" As a matter of fact, S. C. Toof & Co., notwithstanding the sending of the above message, would have employed the plaintiff as contemplated if he had reported for duty on Monday, September 27th. The reason that Mr. Zahn, S. C. Toof & Co's manager, sent this message, was that Robinson, the plaintiff, seemed to him to be shiftless in his mind, and seemed to be unable to tell when he would come until the following Tuesday—four days later. The plaintiff did not know for several days that his message had been incorrectly transmitted. He did not advise S. C. Toof & Co. that he would waive his demand that they advance transportation by wire, nor did he advise them that he would arrive Monday, if necessary, but he imme-

diately proceeded to cancel his arrangement for a man from Chicago to take care of his Grand Rapids business and continued to run it himself until August, 1910, when he closed out the said business, and went to Chicago, and there accepted a position as engraver at $30 per week.

"(6) The error was not discovered until some time later and the plaintiff was prevented from entering the employ of S. C. Toof & Co. solely by reason of the error in the transmission of said message.

"(7) By reason of the error in the transmission of this telegram, the plaintiff was prevented from earning the sum of $37.50 per week from S. C. Toof & Co., for a period of six months, or 26 weeks.

"(8) There is no evidence in the case tending to show that the plaintiff earned any sums during the period of the contract with S. C. Toof & Co.

"(9) The plaintiff, if he had removed to Memphis and entered the said employment, would have been obliged to remove a portion of his household goods from Grand Rapids to that city, and to pay the expenses of moving such goods. He would also have incurred the expense of removing himself, his wife and child under the age of six years to Memphis. The expense thus incurred would have amounted to about $77. The plaintiff had also engaged a man from Chicago to take charge of his business in Grand Rapids during the term of his contract with S. C. Toof & Co., and would have been obliged to pay this man a salary of $15 a week during the period of the contract with S. C. Toof & Co. He was not subjected to this expense because he arranged with this man not to come to work when he discovered he (plaintiff) would be prevented from entering the employment of S. C. Toof & Co.

" (10) There is some conflict in the testimony as to whether or not there is a custom of the engravers' trade by which when an employé takes a position in a distant city his employer shall, if requested, advance the employé's transportation to the place of work. Both the plaintiff and S. C. Toof & Co. regard such custom as existing, but this was not material because the plaintiff was not prevented from entering the employment of S. C. Toof & Co. by reason of the words in the erroneously transmitted telegram 'Advance transportation by wire.'

" (11) Had the plaintiff arrived in Memphis on Monday afternoon, September 27th, he could not have entered said employment until Tuesday morning, and by arriving in

Memphis on Tuesday morning he could have entered said employment the same morning.

"(12) The plaintiff had been engaged in engraving between 13 and 14 years, and was familiar with all branches of that trade. He was 33 years old, and had worked at the business continuously ever since he was about 20. He had worked in Red Oak, Iowa, Newark, N. J., Galveston, Tex., Chicago, Ill., and Grand Rapids, Mich. He was familiar with and experienced in all the necessary branches of the engraver's art, and was a thoroughly competent man, and his services were fairly worth what S. C. Toof & Co. were going to pay him. For about a year prior to September, 1909, he had been in the engraving business for himself in Grand Rapids. Before that he had worked in Chicago at $35 per week, and before that for Dickinson Bros. in Grand Rapids, receiving a salary of $30 per week. After he closed out his business in Grand Rapids and went to Chicago, he was employed from August, 1910, to the trial of this case, at $30 per week. The plaintiff would, and could, ordinarily earn in Grand Rapids, Mich., not less than $30 per week working at his trade. His services were in ordinary demand and he had been able to get good positions."

"Conclusions of Law.

"(1) The oral negotiations between the plaintiff and S. C. Toof & Co.'s representative in the summer of 1909 did not constitute a contract, but a formal written offer was later made by S. C. Toof & Co. and accepted by the plaintiff by which the latter was to be employed for a certain period of six months at $37.50 per week, and thereafter for an indefinite period at $40 per week. This offer and acceptance are contained in Plaintiff's Exhibits A, B, C, D, E, and F, which constituted a valid binding contract for six months' employment at $37.50 per week under which the plaintiff was to report for work within a reasonable time after September 20, 1909.

"(2) The plaintiff's telegram of September 24th in reply to S. C. Toof & Co.'s telegram of the same day (Plaintiff's Exhibit H), as delivered to the defendant for transmission, constituted a substantial compliance with the contract of employment.

"(3) This telegram, as delivered to S. C. Toof & Co. by the defendant, with the word 'arrive' therein changed

to 'wire,' did not constitute a compliance with said contract of employment.

"(4) As between himself and S. C. Toof & Co., the plaintiff was bound by the message as received by S. C. Toof & Co., and the latter had a right to assume that the message received by it was the message sent by the plaintiff.

"(5) Upon receipt of the said telegram the plaintiff was justifiably discharged by S. C. Toof & Co.

"(6) There being no evidence to rebut the presumption arising upon proof of an error in transmission of this telegram, and the defendant having actual notice of the importance of the message and the damages likely to result from an erroneous transmission thereof, the defendant is liable for all the damages which naturally flowed from this erroneous transmission.

"(7) The measure of damages is the difference between what the plaintiff would have earned under his said contract with S. C. Toof & Co. and what he did or might, by reasonable diligence, have earned in similar employment during the term of the contract, and the plaintiff is entitled to recover the salary which he would have earned for 26 weeks or $975, less $15 per week for 26 weeks, or $390, which he would have been obliged to pay an assistant for taking charge of his business in Grand Rapids if the plaintiff had been allowed to complete his said contract, and less the amount of expense he would have been put to in removing himself, his family, and household goods from Grand Rapids to Memphis, or $77. The total amount which the plaintiff has been damaged and which he is entitled to recover is $508."

There are 12 exceptions to the findings.

The defendant has brought the case here for review, and there are 30 assignments of error, sufficiently raising the questions argued.

We shall consider the questions argued in appellant's brief in the order in which they are presented.

It is urged:

(1) That the plaintiff's right to prevail depends upon the existence of a valid contract of employment with S. C. Toof & Co., and such a contract did not exist. The trial court found that there was a contract for six months'

employment. The defendant denies the existence of a valid contract upon two grounds: *First,* because of want of mutual assent; and, *second,* because the alleged contract was void under the statute of frauds.

(*a*) Was mutual assent lacking?

Calling attention to the correspondence set forth in the findings, it will be noted that on September 4th Toof & Co. accepted the proposition contained in Exhibit A, and in accepting made the terms and duration of the contract definite when they say:

" We accept your proposition to enter our employ for $37.50 per week for a period of six months."

We agree with plaintiff's counsel that it would be difficult to conceive a more definite and certain way of stating the duration of the employment than this. It is true that, in a new sentence they added a conditional clause for employment after the six months period had expired, saying:

"If at the end of that time you are making good, your salary is to be increased to $40 per week."

The first sentence is definite and certain as to the period of employment and rate of wages. The second is entirely conditional, and binds no one. Letters Exhibits E and F substantially bring the minds of the parties together. The fact that Toof & Co.'s acceptance was not, in technical strictness of construction, identical with plaintiff's offer, does not destroy the mutuality of assent. *Western Union Tel. Co.* v. *Valentine,* 18 Ill. App. 57.

" If an offer is accepted as made, the acceptance is not conditional, and does not vary from the offer because of inquiries whether the offerer will change his terms, or as to future acts, or the expression of a hope, or suggestions," etc., 9 Cyc. p. 269, citing many cases, including *Culton* v. *Gilchrist,* 92 Iowa, 718 (61 N. W. 384).

If there were any doubt of the correctness of the finding, it would seem to be without prejudice, for the reason that in Exhibit G the plaintiff acquiesced in every term of the offer, and the minds of the parties met, unless it be claimed

that because the plaintiff notified Toof & Co. that he would not arrive upon the 20th, but would come not later than the 27th, was a departure from his previous offer. But, it will be noted that he had not contracted to report on September 20th, but that he would be there not later than the 27th, which the circuit judge construed as meaning a reasonable time after September 20th. Then, considering the telegram of September 24th, it must be held that the minds of the parties were together upon every essential term of the contract.

(*b*) Was the alleged contract void under the statute of frauds ?

We are unable to agree with counsel for the defendant that this was a contract for one year, and made some days before the period of employment was to commence. Although there had been talk of a year's employment, it was not agreed to. After the six-month period had expired, any further term was at the will of the employer, who might have discharged the plaintiff if he were not "making good." This court has held that where it is possible that the contract may be performed within the year, although it may run over the year, it is not within the statute of frauds. *Barton* v. *Gray*, 57 Mich. 622 (24 N. W. 638); *Carr* v. *McCarthy*, 70 Mich. 258 (38 N. W. 241); *Herron* v. *Raupp*, 156 Mich. 162 (120 N. W. 584); *Hand* v. *Osgood*, 107 Mich. 55 (64 N. W. 867, 30 L. R. A. 379, 61 Am. St. Rep. 312). We state in passing that in our opinion there was evidence to support the finding of a custom of advancing transportation.

Thus far we have considered the case as though a completed contract was necessary to the validity of the judgment. It is the claim of the defendant that, if there was not a completed contract between plaintiff and Toof & Co., there can be no recovery, because it is said the declaration was limited to an action for causing the breach of an existing contract. We think that this is too narrow a view of the pleadings to be accepted. The declaration also claimed damages for preventing the plaintiff from

entering the employment, and from earning a salary of
$37.50 per week, and the circuit judge found that the
plaintiff was prevented from entering the employ of Toof
& Co. solely by reason of the error in transmission of the
message, and by that error was prevented from earning
$37.50 per week for 26 weeks. If, without a technically
completed contract, plaintiff was entitled to recover the
damages caused by reason of being prevented from com-
pleting a contract, and entering the employment, and
earning a salary, might not the judgment have been ren-
dered upon the other findings, thus reaching the same
conclusion?

But it is the claim of defendant that the judgment can-
not be sustained upon this ground because the sixth and
seventh findings of fact, upon which plaintiff must rely in
this view of the case, are not supported by any properly
admissible evidence. We shall speak of the admissibility
of the testimony upon this point later.

(2) It is urged by defendant that, even if the plaintiff
had a valid contract of employment, the defendant is not
liable for the disruption of that contract by Toof & Co.:

(a) Because upon the undisputed facts the plaintiff's
dismissal was wrongful, and his remedy is against Toof
& Co. (b) The defendant's error in transmission was not
the proximate cause of the damage to the plaintiff.

Upon the first point urged by defendant under this head,
many cases are cited, and the only question is as to their
applicability to the instant case.

We are of the opinion that the rule contended for does
not prevail in contracts of employment, but dismissal is
warranted by any act of the servant which is prejudicial,
or likely to be prejudicial, to the interests of the employer.
20 Am. & Eng. Enc. Law (2d Ed.), p. 27. A master or
employer is justified in discharging his servant or employé
for any breach of the express or implied conditions of the
contract of employment. 26 Cyc. p. 989, and cases cited.
The message of the plaintiff as delivered to Toof & Co.
expressed an intention to delay his arrival at Memphis for

an indefinite period beyond September 27th, and left entirely uncertain when he would arrive, if at all. We think that the finding was justified by the evidence that the plaintiff's message as delivered to the defendant for transmission indicated his intention of substantially complying with the terms of the contract, but a delay of several days, coupled with the indefiniteness as announced in the message as delivered, amounted to an unreasonable delay and departure from the contract, which justified Toof & Co. in terminating the contract. As delivered, the message showed an indifference and unfaithfulness to the interests and business of Toof & Co., and might well be said to cast a serious suspicion upon the integrity and trustworthiness of the plaintiff, and upon his intention of ever performing his contract at all.

"Whatever would be a good reason for discharging a servant would be an equally good reason for refusing to take him into one's service after having engaged to do so." 26 Cyc. p. 977.

See, also, Smith on Master & Servant, p. 183.

"As a general proposition any act of a servant which injures or has a tendency to injure his master's business interests, or reputation will justify his dismissal. Actual loss is, however, unnecessary, but it is sufficient if from the circumstances it appears that the master has been or is likely to be damaged by the act complained of." 26 Cyc. p. 988, and cases cited.

The reasonableness of the conduct of the plaintiff, as indicated by the message received at Memphis, was a question of fact. *Shaver* v. *Ingham*, 58 Mich. 649 (26 N. W. 162, 55 Am. Rep. 712); *Child* v. *Manufacturing Co.*, 72 Mich. 623 (40 N. W. 916); *Degen* v. *Railway Co.*, 113 Mich. 66 (71 N. W. 459); *Schaub* v. *Arc Welding Co.*, 123 Mich. 487 (82 N. W. 235); *Schaub* v. *Welded-Barrel Co.*, 125 Mich. 591 (84 N. W. 1095). Many other cases might be cited from other States to the same effect.

(*b*) It is next contended by defendant that its error in transmission was not the proximate cause of the dam-

age to the plaintiff. We have already indicated that the act of Toof & Co. was not a wrongful act. Was there competent evidence that the negligence of the defendant was the proximate cause of the damage? The circuit judge found that plaintiff was prevented from entering the employment solely by reason of the negligent act of the defendant. There was evidence warranting this conclusion if it was admissible. It is contended by the defendant that the court erred in admitting in evidence the answers of the witness Zahn, the vice president of Toof & Co., to the following questions:

"Did you consider the telegram from Mr. Robinson of the 24th a compliance with the correspondence that you had had with him regarding the time when he should arrive to go to work?"

"Now, Mr. Zahn, if the telegram from Mr. Robinson had been definite, and had stated that he would arrive on Tuesday, you would not have sent him the telegram which you did calling the trade off, would you?"

"Did the request of Mr. Robinson to advance him transportation have anything to do with your calling the trade off?"

"Did you consider the fact that he was to arrive on Tuesday morning, instead of Monday afternoon, a material variance with the contract, and was that the reason you wired him to consider the trade off?"

Was testimony of this nature, showing the state of mind, and the construction of the contract by the party, competent and material, as bearing upon the probabilities of the conduct of the party, in connection with the other circumstances of the case? We have examined the many cases cited by counsel upon this subject, and are satisfied that they cannot all be reconciled. Those tending to support the position of the plaintiff that the state of mind or intent is a fact which may be testified to are the following: In *Barker* v. *Telegraph Co.*, 134 Wis. 147 (114 N. W. 439, 14 L. R. A. [N. S.] 533, 126 Am. St. Rep. 1017), a patient sent a telegram summoning the plaintiff, a physician. The telegram was not delivered. The plaintiff lost an opportunity to make a professional visit and obtain a fee.

The defense was that there was no certainty that a contract would have resulted.   The court said:

" The concrete question with which we are confronted, therefore, is whether under the allegations of this complaint it is conceivable that evidence may be given that might satisfy a jury, not by conjecture, but by reasonable inferences from established facts according to the known course of nature and human nature, that plaintiff would have made pecuniary gains if he had received the telegram, and was prevented from so doing solely by its nondelivery without any intervening independent cause. We may concede that he cannot establish this by his testimony directly that he would have done one thing or another, because that would be merely expressing his opinion upon the very question of inference which the jury must answer if it is capable of answer at all. *Hill* v. *Surety Co.*, 107 Wis. 19, 29 (81 N. W. 1024 [82 N. W. 691]). But might not facts consistent with the allegations of the complaint be established so that the jury might legitimately infer a probable course of conduct? The law is full of illustrations based upon inferences as to future conduct, some so plain that they may be drawn without evidence by application of mere common knowledge of human and natural tendencies, others needing the aid of evidence as to custom, interest, or formed intent, and the like. *Allison* v. *Chandler*, 11 Mich. 542, 555. Thus in *Hill* v. *Surety Co.* the inference as to what insurance companies would have done but for the negligence which denied them the opportunity was sustained by the proof of their custom under similar circumstances. Loss of earnings resulting from tortious injury can be established only by inference that the injured person would work. Sedgwick, Dam. (8th Ed.) § 180. Loss of profits can be established by inference from previous course of business. Sedgwick, Dam. (8th Ed.) § 182. In *Derry* v. *Flitner*, 118 Mass. 131, defendant wrongfully occupied a place of shelter to which plaintiff's vessels were entitled. Two of the latter were exposed to and sunk by storm. The court sustained inference that but for defendant's wrong they would have been in the place of safety. Damages for sales induced by tort are allowed merely on proof that sales *could* have been made at higher prices; the inference being drawn without evidence that plaintiff would have so sold. * * * Such

illustrations of the drawing of inferences as to what would have happened but for wrongful prevention might be multiplied without limit. No good reason is apparent why the same principle of reasonable probability may not be shown against a telegraph company which wrongfully withholds information as well as in the ordinary run of cases. * * * The plaintiff here is entitled to damages the same as if he were intercepted after he had received this telegram by an assault, or other tort which disabled him from acting in response thereto. The complaint alleges him to have been building up a practice in Chicago. That is a fact, of course, if it can be proved. He was invited to come to Chicago to see a man professionally. Is it beyond the realm of reasonable inference that he would have responded to this call? Again, it is alleged that the patient in Chicago had fully determined to take treatment with him. Such an intent already formed is a fact just as much as any other physical fact. Jones, Ev. § 167; *Bowe* v. *Gage,* 127 Wis. 245 (106 N. W. 1074 [15 Am. St. Rep. 1010]). Nothing is better established in the law than that, when a settled design is proved to exist, it is legitimate inference that it will be persisted in and acted upon unless it appear that there is some supervening obstacle. 1 Wigmore, Ev. §§ 102–112."

See, also, *Western Union Tel. Co.* v. *Love Banks Co.,* 73 Ark. 205 (83 S. W. 949, 3 Am. & Eng. Ann. Cas. 712); *Western Union Tel. Co.* v. *Carver,* 15 Tex. Civ. App. 547 (39 S. W. 1021).

In *Hasbrouck & McCulloch* v. *Telegraph Co.,* 107 Iowa, 160 (77 N. W. 1034, 70 Am. St. Rep. 181), Mr. Hasbrouck, a member of the plaintiff firm, was permitted to testify, as was also the other member, that, if the telegram as filed for transmission had been received, they would not have sent the message they did send. Held, that there was no error in permitting the answers, that it was a necessary fact to be shown under the issues, and it is difficult to imagine any other method of proving it, citing *State Ins. Co.* v. *Jamison,* 79 Iowa, 245 (44 N. W. 371). See *Western Union Tel. Co.* v. *Fenton,* 52 Ind. 1; *Wallingford & Son* v. *Telegraph Co.,* 53 S. C. 410 (31 S. E. 275); *Wallingford* v. *Telegraph Co.,* 60 S. C. 201 (38 S. E. 443, 629).

In *Lathan* v. *Telegraph Co.*, 75 S. C. 129 (55 S. E. 134), the court said:

"Among the cases upon which the appellant relies to sustain the proposition that evidence as to whether the plaintiff would have accepted the offer contained in the telegram cannot be considered on the ground that it is conjectural and uncertain, is that of *Beatty Lumber Co.* v. *Telegraph Co.* [52 W. Va. 410], 44 S. E. 309, in which the authorities are reviewed. The case was well considered, and strongly supports the appellant's contention. It is predicated upon the theory that when there is a failure to deliver a telegram containing an offer to sell, and the market advances in price, the addressee cannot recover damages, unless it is made to appear that he would have accepted the offer, and that the testimony of the addressee that he would have accepted the offer cannot be considered in determining the company's liability on the ground that it is conjectural and uncertain. The fallacy in the reasoning of the court in that case is in supposing that the telegraph company would not be liable, unless it was shown that the addressee would have accepted the offer. If the failure to deliver the telegram was the direct and proximate cause of the delay on the part of the plaintiff, in postponing the purchase of the meal, whereby he was compelled, when he went into the market, to pay the advanced price, he would be entitled to recover damages, although there was no testimony establishing the fact that he would have accepted the offer. Such testimony, however, is admissible for the purpose of showing the intent and motive of the plaintiff, in postponing his purchases, on the ground that it is explanatory of the delay."

See *McPeek* v. *Telegraph Co.*, 107 Iowa, 356 (78 N. W. 63, 43 L. R. A. 214, 70 Am. St. Rep. 205); *Texas, etc., Tel. Co.* v. *McKenzie*, 36 Tex. Civ. App. 178 (81 S. W. 802); *Stumm* v. *Telegraph Co.*, 140 Wis. 528 (122 N. W. 1034); *Herron* v. *Telegraph Co.*, 90 Iowa, 129 (57 N. W. 696); *McNeil* v. *Telegraph-Cable Co.* (Iowa), 134 N. W. 611. Many more cases might be cited to the same effect. We find no error in the holding of the court on this subject. If there was error in admitting the testimony alluded to, it was harmless error.

It is next claimed that the judgment was excessive. We think the findings upon this subject were clearly within the evidence. In view of the eighth finding of fact, and of the rule that the burden of showing, in an action for wrongful discharge, that the servant or employé by reasonable diligence might have obtained other employment, is upon the defendant, the defendant is in no position to complain of the amount of the judgment. *Farrell v. School District*, 98 Mich. 43 (56 N. W. 1053); *Allen v. Whitlark*, 99 Mich. 492 (58 N. W. 470).

We find no prejudicial error in the record, and the judgment of the circuit court is affirmed.

Moore, C. J., and Steere, McAlvay, Brooke, Blair, and Ostrander, JJ., concurred. Bird, J., did not sit.